**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000023
10-FEB-2021
07:51 AM
Dkt. 70 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAII

---o0o---

JD, Petitioner-Appellee, v.
PD, Respondent-Appellant

CAAP NO. 20-0000023

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-DA 19-1-2603)

February 10, 2021

HIRAOKA, PRESIDING JUDGE, WADSWORTH AND NAKASONE, JJ.

OPINION OF THE COURT BY NAKASONE, J.

Respondent-Appellant PD (**Father**), self-represented, appeals from the December 17, 2019 Judgment of the Family Court of the First Circuit (**family court**),[1] that granted an Order for Protection to Petitioner-Appellee JD (**Mother**) and the couple's child, RD (**Child**).

In domestic abuse protective order cases involving a minor, Hawaii Revised Statutes (**HRS**) Chapter 586 requires that the Department of Human Services (**DHS** or **Department**) provide the

---
[1] The Honorable Natasha R. Shaw presided.

family court, the petitioner, and the respondent with "a written report on the disposition of the referral" before issuance of the protective order.  HRS § 586-10.5 (2018).[2]  The DHS reports provided to the family court and the parties in this case do not contain DHS's "disposition" of the referral.  Accordingly, we vacate the Order for Protection and remand this case to the family court with instructions.

## I.  BACKGROUND

On November 8, 2019, Mother filed a Petition for an Order for Protection (**Petition**) against Father, making several allegations of domestic abuse of Mother and Child in the form of physical harm, extreme psychological abuse, threat of imminent physical harm, bodily injury, and assault.  Six allegations of domestic abuse of Mother and Child were made in the Petition, and three of those allegations pertinent to this appeal are as follows:

In Allegation A, Mother claimed that in 2015, "[Father] sat me down, had my phone and called almost all contacts[,] slapping my face.  [Child] was crying and sitting next to me." (**Allegation A**)

In Allegation B, Mother claimed that on November 7, 2019, "Department of Human Services (DHS) Child Welfare Services (CWS) completed investigation w/ [Child] and [Father].  DHS removed [Child] from the care of [Father], declaring [Father] unsafe.  On 11/7/19, [Child] was placed in the care of myself, [Mother]."  (**Allegation B**)

―――――――――――――――

[2]     HRS § 586-10.5 is set forth in the Discussion section <u>infra</u>.

In Allegation C, Mother claimed that on October 7, 2019, "An active Child Welfare Services (CWS) case #00124600 was generated alleging threat of abuse and neglect to [Child] by [Father].  On 10/3/2019 [Child] was seen at Kapiolani Hospital.  It was reported and documented by hospital [sic] visible . . . bruising across [Child']s backside."  (**Allegation C**)

Upon reviewing the November 8, 2019 Petition, the family court granted an ex parte temporary restraining order (**TRO**) the same day, prohibiting Father from contacting Mother and Child.[3]  Along with the issuance of the TRO, the family court ordered DHS to investigate the matter, submit a report, and appear to testify at a show-cause hearing[4] on Mother's Petition.

A show-cause hearing on Mother's Petition was held on November 20, 2019.  The family court granted Father's request for a continuance of the hearing to seek legal representation, and the hearing was continued to December 17, 2019.

At the December 17, 2019 continued show-cause hearing, Father appeared with an attorney.  The family court accepted the two DHS reports prepared by the DHS social worker, respectively dated November 18, 2019 and December 17, 2019.  Both Father and

---

[3]     HRS § 586-4(c) (2018) provides that the family court may issue an ex parte TRO if there is "probable cause to believe that a past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent."

[4]     Under HRS § 586-5(b) (2018), on the earliest date possible, and no later than fifteen days from the date the TRO is granted, the family court must hold a hearing (**show-cause hearing**) on the petition "requiring cause to be shown why the order should not continue."  At the show-cause hearing, if the court finds that the respondent "has failed to show cause why the order should not be continued and that a protective order is necessary to prevent domestic abuse or a recurrence of abuse," the court may issue a protective order.  HRS § 586-5.5(a) (2018).

Mother testified, along with Child's former teacher, and the DHS social worker who prepared the reports for the family court.

At the conclusion of the show-cause hearing, the family court granted the Petition and issued the Order for Protection in favor of Mother and Child for a period of five years, prohibiting Father's contact with Mother and Child, except for full supervised visitation and as needed for court proceedings, until December 17, 2024. The family court found that Father had failed to show cause why the TRO should not be continued, and found that Mother had proved Allegations A, B, and C by a preponderance of the evidence, and that a protective order was necessary to prevent domestic abuse or the recurrence of abuse. The family court filed its Findings of Fact and Conclusions of Law on February 24, 2020, which stated in pertinent part:

> 22. Following trial on the Petition, the Court finds that MOTHER and DHS Social Worker are credible and that MOTHER proved the material allegations of the Petition by a preponderance of the evidence as to allegations A, B, and C, that FATHER failed to show good cause why the order should not be continued, and finds that a protective order is necessary to prevent domestic abuse or recurrence of domestic abuse.

Father timely filed his appeal on January 15, 2020.[5]

On March 9, 2020, Father filed a Motion and Declaration to Amend [and] Dissolve the Existing Order [for Protection] with the family court.[6] Father claimed to have received (1) a Notice

---

[5] An Amended Notice of Appeal was filed on January 22, 2020.

[6] Father's motion contained a notice of hearing that indicated that a hearing was scheduled for May 11, 2020. The court minutes of May 11, 2020 reflect that Father's motion was denied because the family court was divested of jurisdiction to modify any order pending appeal with this court.

of CWS Disposition dated January 13, 2020 from the DHS Social Services Division Child Welfare Services Branch (**DHS CWS**), and (2) a Notice of Termination or Reduction of Service dated January 13, 2020 from the DHS Social Services Division.[7]  The Notice of CWS Disposition purportedly informed Father that "DHS CWS has completed its investigation/assessment pursuant to Hawaii Revised Statutes (HRS) §350 and §587A" into the "report alleging that you were the perpetrator of child abuse and/or neglect" as to Child, and the "disposition" as to allegations of threatened physical harm/abuse and threatened physical neglect was that the allegations were not confirmed.  Based on these documents, Father argued that the "DHS/CSW [sic] case has since been closed" because "DHS found that the child is not at risk of harm or threatened harm with respect to Father[,]" and that "[a]llegations against Father were not confirmed, and social services have been discontinued as of January 13, 2020[.]"

On appeal, Father's Opening Brief[8] contends that the family court erred by (1) precluding the testimony of Child's school counselor, (2) admitting the DHS CWS reports into evidence while the investigation was still pending, (3) applying the wrong standard in concluding that the Order of Protection was necessary to prevent future abuse, (4) concluding that the alleged abuse warranted a protection order, and (5) exhibiting bias in favor of

---

[7]     We make no factual determination regarding any of the documents attached to Father's motion; we note that the CPSS and Intake numbers shown on the documents are not the same, even among pages within the same document.

[8]     Mother did not submit an answering brief.

Mother and the DHS CWS social worker.  Father also claims he received ineffective assistance from his counsel.

## II.  STANDARDS OF REVIEW

### A.  Family Court Conclusions of Law

"The family court's [conclusions of law] are reviewed on appeal de novo, under the right/wrong standard." LC v. MG & Child Support Enf't Agency, 143 Hawaiʻi 302, 310, 430 P.3d 400, 408 (2018), reconsideration denied sub nom. LC v. MG, No. SCAP-16-0000837, 2018 WL 5785070 (Haw. Nov. 2, 2018), and cert. denied sub nom. LC v. MG, 140 S. Ct. 234 (2019) (citing In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001)). Conclusions of law are "not binding upon an appellate court and are freely reviewable for their correctness." Id.

### B.  Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo." State v. Castillon, 144 Hawaiʻi 406, 411, 443 P.3d 98, 103 (2019) (quoting Panado v. Bd. of Trs., Emps.' Ret. Sys., 134 Hawaiʻi 1, 10, 332 P.3d 144, 153 (2014)).  In reviewing questions of statutory interpretation, we are guided by the following principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Id. (citing Panado, 134 Hawaiʻi at 10-11, 332 P.3d at 153-54).

### III.  DISCUSSION

**A.  The family court erred in granting the Order for Protection where the DHS reports submitted to the court did not contain a disposition as required by HRS § 586-10.5.**

Father contends that the family court erred in admitting the "hearsay evidence"[9] in the DHS reports[10] at the show-cause hearing, while the DHS investigation was still pending.  While Father does not specifically challenge the family court's receipt of the DHS reports under the applicable statute, HRS § 586-10.5, Father's challenge to the interim, non-final content of the reports has merit under the statute.  HRS § 586-10.5 provides:

> **§ 586-10.5.  Reports by the department of human services; court responsibilities**
>
> In cases where there are allegations of domestic abuse involving a family or household member who is a minor or an incapacitated person as defined in section 560:5-102, the employee or appropriate nonjudicial agency designated by the family court to assist the petitioner <u>shall report the matter to the department of human services, as required under chapters 350 and 587A</u>, and shall further notify the department of the granting of the temporary restraining order and of the hearing date.  <u>The department of human services shall provide the family court with a written report on the disposition of the referral</u>.  The court shall file the report and mail it to the petitioner and respondent at least two working days before the hearing date, if possible.  If circumstances prevent the mailing of the report as required in this section, the court shall provide copies of the report to the petitioner and respondent at the hearing.  The report shall be noted in the order dismissing the petition or granting the restraining order.

(Emphases added.)

---

[9]  Father's hearsay challenge raised on appeal was not preserved below, and is waived.  <u>See</u> Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(iii).

[10]  Father challenged the admission of "CWS Short Report Docket 43" which is not a correct docket reference, and "CWS Short Report Docket 49" which is the 11/20/19 Report submitted to the family court.  We construe Father's challenge to encompass both reports received and considered by the family court.

For cases involving domestic abuse allegations against a minor, this statute requires the family court's designee to "report the matter to [DHS] as required under chapters 350 and 587A" and notify DHS of the TRO and the date of the show-cause hearing. Id.; see Hamilton ex rel. Lethem v. Lethem, 119 Hawaiʻi 1, 11, 193 P.3d 839, 849 (2008) (noting HRS § 586-10.5 requires that any TRO issued under the chapter must be reported to DHS for investigation). DHS must then "provide the family court with a written report on the disposition of the referral," which must be filed by the family court and provided to the parties at least two working days before the hearing "if possible." HRS § 586-10.5. The statute also requires that "[t]he report shall be noted in the order dismissing the petition or granting the restraining order." Id. The statute does not define the term "disposition," nor explain what is meant by "disposition of the referral." Id.

In this case, pursuant to HRS § 586-10.5, two confidential DHS reports were received and considered by the family court at the show-cause hearing. Both reports do not appear to contain any "disposition" by DHS of the child abuse referral. The first report filed November 20, 2019, entitled "Short Report to Court, 11/18/19" (**First DHS Report**) describes DHS's investigation into the allegations of abuse against Child by both Father and Mother, and notes that DHS was acting pursuant to the family court's order in this case. The First DHS Report concludes with DHS's assessment of Child's living arrangement, a recommendation regarding the restraining order, and states that

DHS "will continue to investigate[.]"  The second DHS report was filed the day of the continued hearing on December 17, 2019, and was entitled "Short Report to Court, 12/17/19" (**Second DHS Report**).  The Second DHS Report, inter alia, provided an update on Child's status and progress since the First DHS Report filed a month before, and concluded with DHS's assessment regarding Child's living arrangement, a recommendation regarding the restraining order, and again stated that DHS "will continue to investigate[.]"  Neither report contained the word "disposition," nor any language indicating DHS's disposition of the child abuse referral.  Instead, both reports indicated that DHS's investigation into the referral would continue.

After the show-cause hearing on December 17, 2019 was concluded and the Order for Protection had already been granted, Father claimed to have received a Notice of CWS Disposition from DHS CWS dated January 13, 2020, which explained that "disposition" meant "the results of the investigation/assessment."  The Notice of CWS Disposition states in pertinent part as follows:

Date: 1/13/2020
**NOTICE OF CWS DISPOSITION**
To:   [(Father's name)]        Re: [(Child's name, date of birth)]
      [(Father's address)]
                              CPSS# 125646 INTAKE #N6697

The Department of Human Services (DHS) Child Welfare Services (CWS) Branch received a report alleging that you were the perpetrator of child abuse and/or neglect.  DHS CWS has completed its investigation/assessment pursuant to Hawaii Revised Statutes (HRS) §350 and §587A.  **This letter is to inform you of DHS CWS' disposition (i.e., the results of the investigation/assessment.)**

"C" means that the allegation was **CONFIRMED.**
This information will be entered into Hawaii's Child Protective Services System (CPSS) Central Registry.  The

9

> information may be used, with your consent, for a background clearance, or as provided by federal and State laws. **This confirmation may affect your ability to gain employment that involves children or vulnerable adults.**
>
> **"N"** means that the allegation was **NOT CONFIRMED.** Allegations which are **NOT** confirmed are **NOT** entered into Hawaii's CPSS Central Registry and will not be available to the public for any purpose.
>
> Confirmed and not confirmed dispositions are stored in the DHS CWS database, and are only available to CWS for the purpose of assisting CWS in conducting future risk and safety assessments, in accordance with the federal Child Abuse Prevention and Treatment Act (CAPTA) of 2010 and HRS §350.
> DHS CWS' disposition(s) of the child abuse and/or neglect allegation(s) against you are indicated with either a **"C"** or **"N"** on the table below.
> . . . .

(Bolding in original.) On the table, the DHS CWS's "disposition" on "Threatened Physical Harm/Abuse" was marked "N" or not confirmed, and "Threatened Physical Neglect" was also marked "N" or not confirmed. As to other categories on the table, inter alia, of physical harm/abuse, failure to thrive, physical neglect, abuse, and neglect –- no findings of "confirmed" or "not confirmed" were listed, and these categories were left blank. We make no factual determination regarding this document (see supra note 7), but note that it reflects on its face a disposition as to the allegations of abuse by Father against Child that appears to be inconsistent with the family court's findings from the show-cause hearing a month before. At that time, the family court found that Allegation B (that DHS CWS had completed investigation of Father and removed Child from Father's case declaring Father unsafe) and Allegation C (that an active CWS case was generated alleging threat of abuse of neglect to Child

by Father due to hospital's report of bruising on Child's backside) had been proven by the preponderance of the evidence.

> **1.    "Disposition" means the final result of the investigation or assessment of a child abuse referral that DHS conducted pursuant to its procedures.**

While HRS § 586-10.5 does not define "disposition" of a child abuse referral, this statute references the child abuse reporting and child protection procedures in HRS Chapters 350 and 587A.  The Notice of CWS Disposition quoted above also noted that DHS CWS had "completed its investigation/assessment" pursuant to these same chapters.  "It is well established that statutes in pari materia should be construed together."  Jijun Yin v. Aguiar, 146 Hawaiʻi 254, 264, 463 P.3d 911, 921 (2020) (citation omitted).  Thus, we examine HRS Chapters 350 and 587A in pari materia, for clarification of the meaning of the term "disposition" as used in HRS § 586-10.5.  See HRS § 1-16.[11]

HRS Chapter 350 deals with the reporting of child abuse and neglect, inter alia, setting mandatory reporting requirements and imposing penalties for non-reporting.  HRS Chapter 350 does not contain the term "disposition" in any of its sections.

HRS Chapter 587A codifies the Child Protective Act, the purpose of which is to protect children who have been harmed or threatened with harm, by providing a means for identifying, reporting, and investigating such cases, and implementing plans

---

[11]    HRS § 1-16 (2009 & Supp. 2018) provides, "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another."

to ensure that these children are provided with a safe family home.  This chapter contains a single reference to the term "disposition" in its statement of purpose and construction in HRS § 587A-2 (2018), that provides, "The legislature finds that prompt identification, reporting, investigation, services, treatment, adjudication, and <u>disposition</u> of cases involving children who have been harmed or are threatened with harm are in the children's, their families', and society's best interest because the children are defenseless, exploitable, and vulnerable . . . ."  (Emphasis added.)  This section describes the various procedures set forth in the Child Protective Act, from reporting and investigation, to adjudication and disposition.  While only the term "adjudication"[12] is defined in the chapter, the language employed in § 587A-2 shows that terms such as investigation, adjudication, and disposition, are distinct.

The term "disposition" is also found in the Hawaiʻi Administrative Rules (**HAR**) for DHS Child Welfare Services Programs, under a chapter dealing with Child Welfare Casework Services.  <u>See</u> <u>generally</u> HAR § 17-1610 (effective 2010-2021).  The Notice of Termination or Reduction of Services Father provided also referenced these rules.[13]  The stated goal of the

---

[12]     The term "adjudication" is defined in the HRS § 587A-4 (2018) definitions section, as follows: "'Adjudication' means a finding by a court that is supported by a preponderance of the evidence that the child has been harmed or is subjected to threatened harm by the acts or omissions of the child's family."  The definitions section for the chapter, HRS § 587A-4, does not contain a definition of "disposition."

[13]     This document purportedly informed Father that DHS was terminating its services since Child was "not at risk of harm or threatened harm," citing HAR § 17-1610-45(1).  HAR § 17-1610-45 is entitled "Termination of child welfare casework services" and states that "Notice shall be provided and child
(continued...)

Department under this chapter is to "provide services to the child who has been the subject of a report of abuse, neglect, or threatened harm" to ensure the child's safety, permanency, and well-being.  HAR § 17-1610-1.  While no definition of "disposition" appears in the definition section of HAR § 17-1610-2, the term appears in a section entitled "Disposition of assessment" as follows:

> 17-1610-24 <u>Disposition of assessment.</u>  (a) For those reports accepted for assessment pursuant to chapter 350, HRS, a disposition shall be made in accordance with departmental procedures and documented in the department's information system within sixty working days of the acceptance of the report as to whether the child has been harmed.
>
> (b) The legal custodian and the alleged maltreater shall be provided written notice of the disposition of the assessment in accordance with section 17-1610-11 . . . .

(Underscoring in original.)  The definitions section provides that "'Assessment' or 'investigation' is the professional, systematic, gathering and evaluation of information about the family for the purpose of making decisions regarding confirmation of child abuse and/or neglect, protection of the child, and services to the family."  HAR § 17-1610-2.

Based on the foregoing, the term "disposition" is one that is used by DHS in its administrative rules and in HRS § 587A-2.  In conducting a plain meaning analysis, the words of a statute "must be taken in their ordinary and familiar signification," with regard "to their general and popular use."  <u>Wells Fargo Bank, N.A. v. Omiya</u>, 142 Hawaiʻi 439, 449, 420 P.3d

---

[13](...continued)
welfare casework services shall be terminated when: (1) The department finds the child is not at risk of harm or threatened harm[.]"

370, 380 (2018) (quotation marks and citations omitted). A court may also "resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined." Id. at 449-50, 420 P.3d at 380-81 (quotation marks and citations omitted). The definition in the Notice of CWS Disposition quoted above, that "disposition" means "the results of the investigation/assessment," is one that is ordinarily applied and generally used. We hold that the term "disposition" as used in HRS § 586-10.5, means the result of the investigation or assessment that the Department conducted pursuant to its procedures for a child abuse referral. This definition comports with the typical legal meaning of "disposition" as a "final settlement or determination[.]" *Disposition*, Black's Law Dictionary (11th ed. 2019). It is also consistent with the common meaning of "disposition" as a "final arrangement" or "settlement[.]" *Disposition*, Merriam-Webster's Collegiate Dictionary 361 (11th ed. 2003). And as set forth below, this definition is also consistent with the legislative history of HRS § 586-10.5.

>          2.     **The legislative history of HRS § 586-10.5 shows that the legislature intended that the DHS report contain a "disposition" of the child abuse referral, and that an investigative report without a "disposition" does not satisfy the statute.**

"The legislature enacted HRS Chapter 586 in 1982 to streamline the procedures for obtaining and issuing ex parte temporary restraining orders to prevent acts of or the recurrence of domestic abuse." Coyle v. Compton, 85 Hawaiʻi 197, 205, 940

P.2d 404, 412 (App. 1997) (quotation marks and citations omitted).  In 1987, HRS § 586-10.5 was added as a new section to Chapter 586,[14] to "ensure the involvement and assistance of the Department of Social Services and Housing (DSSH) in domestic abuse matters involving alleged abuse to minors."  S. Stand. Comm. Rep. No. 1444, in 1987 Senate Journal, at 1521.  The legislature believed that the new section would "give the Family Court and responsible state agencies the ability to better protect the victims of domestic abuse."  Id.  In 1991, when the statute was amended to include reference to both Chapter 350 and Chapter 587,[15] the legislature explained that "Chapter 350

_____

[14]    The new section of HRS 586-10.5 read as follows:

> **§586-  Reports by the department of social services and housing.**  In cases where there are allegations of domestic abuse involving a minor family or household member, the employee or appropriate nonjudicial agency designated by the family court to assist the petitioner shall report the matter to the department of social services and housing, as required under chapter 350, and shall further notify the department of the granting of the temporary restraining order and of the hearing date.  The department of social services and housing shall provide the family court with an oral or written report of the investigation's progress on or before the hearing date.

1987 Haw. Sess. Laws Act 315, § 7 at 983.

[15]    The 1991 amendment was as follows:

> **§586-10.5 Reports by the department of human services.**  In cases where there are allegations of domestic abuse involving a minor family or household member, the employee or appropriate nonjudicial agency designated by the family court to assist the petitioner shall report the matter to the department of human services, as required under [chapter 350], chapters 350 and 587, and shall further notify the department of the granting of the temporary restraining order and of the hearing date.  The department of human services shall provide the family court with an oral or written report of the investigation's progress on or before the hearing date.

1991 Haw. Sess. Laws Act 141, § 3 at 366 (brackets and underscoring in original).

(continued...)

educates the public about child abuse law while Chapter 587

outlines the procedures used to protect children."  S. Stand.

Comm. Rep. No. 189 in 1991 Senate Journal, at 863.

The key amendment relevant to this appeal occurred in

2007, Act 108, as follows:

> SECTION 1.  Section 586-10.5, Hawaii Revised Statutes, is amended to read as follows:
>
> **"§586-10.5 Reports by the department of human services[.]; court responsibilities**.  In cases where there are allegations of domestic abuse involving a family or household member who is a minor or an incapacitated person as defined in section 560:5-102, the employee or appropriate nonjudicial agency designated by the family court to assist the petitioner shall report the matter to the department of human services, as required under chapters 350 and 587, and shall further notify the department of the granting of the temporary restraining order and of the hearing date.  The department of human services shall provide the family court with [an oral or] a written report [of the investigation's progress on or] on the disposition of the referral.  The court shall file the report and mail it to the petitioner and respondent at least two working days before the hearing date[.], if possible.  If circumstances prevent the mailing of the report as required by this section, the court shall provide copies of the report to the petitioner and respondent at the hearing.  The report shall be noted in the order dismissing the petition or granting the restraining order."
>
> SECTION 2.  Statutory material to be repealed is bracketed and stricken.  New statutory material is underscored.

2007 Haw. Sess. Laws Act 108, §§ 1-2 at 187 (brackets,

strikeouts, and underscoring in original).  Prior to this

amendment, the last sentence of the statute read, "The department

of human services shall provide the family court with an oral or

written report of the investigation's progress on or before the

hearing date."  HRS § 586-10.5 (2006).  The 2007 amendment

deleted the language that the DHS report contain the

---

[15](...continued)

"investigation's progress" and required DHS to include the "disposition of the referral" in its report to the family court.

The legislative discussions on the 2007 amendments focused on the other new requirements of a written report and deletion of the oral report option,[16] and the due process requirement of timely notice of DHS's report to the parties.[17] On the critical change relevant here, there appears to be no specific explanation as to why the content requirement of the report was changed to mandate that a "disposition" of the child abuse referral be included in the report. While no explanation appears in the legislative history, the new requirement specifically mandating a disposition be included is clear.

Based on the foregoing, we conclude that under HRS § 586-10.5, it is not sufficient for DHS to merely report on the status or progress of its investigation into the child abuse allegations. The report from DHS submitted to a family court pursuant to HRS § 586-10.5 must contain a disposition, i.e. the final result of the investigation or assessment of a child abuse

---

[16] The Conference Committee Report states, "Your Committee finds that reports made by the Department of Human Services to the family court should be made in writing to ensure that a written record is established[.]" H. Conf. Comm. Rep. No. 33 in 2007 Senate Journal, at 1016. The change was specifically addressed, to "[d]elete the option that would allow the Department of Human Services to provide an oral report regarding the dispositions of referrals made to the department in cases where there are allegations of domestic abuse involving minors or incapacitated persons[.]" Id.

[17] Regarding the requirement of timely notice to the parties, the legislative history indicates, "The purpose of this bill is to provide basic due process in Family Court protective order proceedings alleging domestic abuse by requiring that the Department of Human Services (DHS) report of the matter be provided to the parties at least two days before the hearing, if possible." H. Stand. Comm. Rep. No. 1683 (2007), available at https://www.capitol.hawaii.gov/session2007/commreports/ SB1161_HD1_HSCR1683_.pdf.

referral that DHS conducted pursuant to its procedures. The disposition is the final result of DHS's "professional, systematic gathering and evaluation" of pertinent information "for the purpose of making decisions regarding confirmation of child abuse and/or neglect" and child protection. HAR § 17-1610-2. By requiring that a written report containing a disposition by DHS be provided to the family court no later than the hearing on the petition, and by requiring that the report be noted in the family court's order dismissing or granting the restraining order, the statute necessarily contemplates that the report must be received by the family court before the hearing and before entry of the family court's order. Mandating that the family court has DHS's disposition information on child abuse allegations, fulfills the legislative purposes of (1) ensuring the assistance of the Department to the family court in domestic abuse situations involving allegations of abuse against minors, (2) giving the family court and responsible state agencies the ability to better protect victims of domestic abuse, and (3) providing due process for the parties. See S. Stand. Comm. Rep. No. 1444, in 1987 Senate Journal, at 1521; H. Stand. Comm. Rep. No. 1683 (2007), available at https://www.capitol.hawaii.gov/session2007/commreports/SB1161_HD1_HSCR1683_.pdf.

Father's challenge to the December 17, 2019 Order for Protection has merit because the family court did not receive a written report on the disposition of the referral, and no written

18

report on the disposition of the referral was filed by the family court, before the Order for Protection was issued.

**B.   Father's remaining points of error**

As to Father's third point of error, the family court applied the correct "preponderance of the evidence" standard of proof to the domestic abuse allegations in this case.  See Kie v. McMahel, 91 Hawaiʻi 438, 442, 984 P.2d 1264, 1268 (App. 1999) (citing Coyle, 85 Hawaiʻi at 206, 940 P.2d at 413).  The "preponderance of the evidence" standard is constitutional when applied in cases involving a protection order under HRS Chapter 586.  Coyle, 85 Hawaiʻi at 206, 208, 940 P.2d at 413, 415.

We need not address Father's remaining points of error at this time.

**IV.   CONCLUSION**

Based on the foregoing, we vacate the family court's December 17, 2019 Order for Protection, and remand to the family court for further proceedings in accordance with this opinion and with the following instructions:

(1) The Temporary Restraining Order granted on November 8, 2019 is hereby reinstated under Hawaiʻi Family Court Rules (**HFCR**) Rule 26(g),[18] and a new 180-day period under HRS § 586-

---

[18]    HFCR Rule 26(g) provides that an appellate court has the power "to suspend, modify, restore, or grant a restraining order during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the decree subsequently to be entered."  At the point the Order for Protection was entered on December 17, 2019, a TRO was in effect.  Because we vacate the Order for Protection, we restore the position of the parties to status quo ante at the time of the show-cause hearing.

5(a)[19] is hereby ordered, starting from the filing of our judgment on appeal;

(2) The family court shall conduct a show-cause hearing on Mother's Petition for an Order for Protection within 15 days of the filing of our judgment on appeal, in accordance with the 15-day deadline of HRS § 586-5(b); and

(3) The family court shall not conclude the show-cause hearing until it has received from DHS, and filed, a written report on the disposition of the referral at issue in this case.

On the brief:

PD,
Respondent-Appellant.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Karen T. Nakasone
Presiding Judge

---

[19] HRS § 586-5(a) (2018) provides that, "A temporary restraining order granted pursuant to this chapter shall remain in effect at the discretion of the court, for a period not to exceed one hundred eighty days from the date the order is granted or until the effective date, as defined in section 586-5.6, or a protective order issued by the court, whichever occurs first."