FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000871**
**27-MAY-2022**
**07:46 AM**
**Dkt. 118 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

—o0o—

**CAAP-19-0000871**
KS, Plaintiff-Appellant,
v.
RS, Defendant/Appellee

AND

**CAAP-20-0000489**
KS, Plaintiff-Appellant,
v.
RS, Defendant/Appellee

CAAP NOS. 19-0000871 and 20-0000489

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. FC-D 18-1-0119)

MAY 27, 2022

GINOZA, CHIEF JUDGE, WADSWORTH AND NAKASONE, JJ.

OPINION OF THE COURT BY NAKASONE, J.

This appeal considers whether, under Hawaiʻi law, a family court may grant tie-breaking authority to one parent in a

joint legal custody award, if the court determines that it is in the child's best interests.  We hold that a family court is not precluded from ordering joint legal custody with tie-breaking authority to one parent based on the court's broad discretion, if it determines that doing so is in the child's best interest.

In this consolidated appeal,[1] Plaintiff-Appellant "KS" (**Mother**) appeals from orders and a decree arising out of a trial regarding her divorce from Defendant-Appellee "RS" (**Father**), entered by the Family Court of the First Circuit (**Family Court**).[2] In CAAP-19-0000871, Mother appeals from the November 25, 2019 Decision and Order Re: Trial, Child Support Guidelines Worksheet, and Property Division Chart (**Trial Order**); and the December 16, 2019 Decree Granting Absolute Divorce and Awarding Child Custody (**Divorce Decree**).[3]  In CAAP-20-0000489, Mother appeals from the June 29, 2020 Order Re: Plaintiff's Motion to Amend or Alter Decision and Order and Granting Defendant's Motion to Enforce Decree (**Order Re: Post-Judgment Motions**).[4]

In CAAP-19-0000871, Mother raises twelve (12) points of error (**POEs**), contending that the Family Court erred:

(1)  in **FOF 47** by determining that the Court could not order joint legal custody with tie-breaking authority;

(2)  in **FOF 47** by finding that it would not be in Child's best interest if either party has sole legal custody;

---

[1]      We consolidated CAAP-19-0000871 and CAAP-20-0000489 by an Order of Consolidation filed on June 15, 2021, and the appeals were consolidated under CAAP-19-0000871.

[2]      The Honorable Jessi L.K. Hall presided.

[3]      In CAAP-19-0000871, after Mother filed her December 23, 2019 Notice of Appeal, the Family Court entered its March 9, 2020 Supplemental Record on Appeal: Findings of Fact and Conclusions of Law (**March 9, 2020 FOFs/COLs**).

[4]      In CAAP-20-0000489, after Mother filed her July 29, 2020 Notice of Appeal from the Order Re: Post-Judgment Motions, the Family Court entered its September 21, 2020 Supplemental Record on Appeal: FOFs/COLs (**September 21, 2020 FOFs/COLs**), regarding the post-judgment motions.

(3)  by failing to apply the statutory factors for determining the "best interest of the child;"

(4)  in **COL 14** by concluding that "some" of Mother's behavior was "detrimental" to Child;

(5)  in **FOFs 59, 62-64** by making certain findings regarding a video of a time-sharing exchange of Child between Mother and Father;

(6)  in **COL 15** by determining that it is in the best interest of Child that the parties shall have joint legal and joint physical custody;

(7)  in **FOF 20** by finding that the parties could have joint custody if there was a neutral body to assist with making decisions;

(8)  by "imposing a mandatory two-part dispute resolution process on the parents, who were ordered to share equally in the costs of this process, instead of awarding final decision-making authority to [Mother];"

(9)  in refusing to allow Mother to introduce stipulated exhibits, pursuant to a "personal policy" of the judge;

(10)  in **FOF 108** by finding that each side chose to withdraw several exhibits at the end of trial;

(11)  in **FOF 101** and **COL 31,** in which the Family Court imposed an "erroneous and inequitable equalization payment on [Mother] based on [Father's] undisclosed and unsubstantiated debt" for attorney's fees and a student loan "which was not supported by competent evidence;" and

(12)  in **COLs 22** and **32** where the Court "denied spousal support to [Mother] as an offset" for the "erroneous and inequitable equalization payment set forth in **COL 31,** without first calculating the amount of spousal support to which [Mother] was entitled to under [Hawaii Revised Statutes (**HRS**)] § 580-47(a), utilizing the factors and principles set forth in <u>Wong v.</u>

Wong," 87 Hawaiʻi 475, 485, 960 P.2d 145, 155 (App. 1998), "which would have outweighed the equalization payment that the Court arrived at."

In CAAP-20-0000489, Mother raises seventeen POEs of which twelve are identical to the POEs in CAAP-19-0000877. The following five additional POEs[5] pertain to the disposition of "Plaintiff's Motion to Alter or Amend Decision and Order After Trial filed November 25, 2019, and to Stay Execution of Order and for Hearing Pursuant to Rules 59(e) and 62(b), Hawaiʻi Family Court Rules" (**Motion to Alter**), in which Mother contends the Family Court erred:

(13) in refusing to grant Mother's Motion to Alter;

(14) in concluding as a matter of law that it could not grant Mother's Motion to Alter because an appeal was pending;

(15) in **COLs 5-7** in the September 21, 2020 FOFs/COLs setting forth the reasoning why the Family Court took no further action on the Motion to Alter;

(16) in **FOF 5** in the September 21, 2020 FOFs/COLs by making a finding of an erroneous filing date; and

(17) in not granting Mother's Motion to Alter to make Father responsible for health care coverage for Child, and erred in **COL 21** in the March 9, 2020 FOFs/COLs where Mother was made responsible for Child's health coverage.

As to CAAP-19-0000871, we vacate in part with respect to the dispute resolution provisions of the award of joint custody, and the determinations regarding spousal support. As to CAAP-20-0000489, we vacate the Order Re: Post-Judgment Motions to the extent it did not address Mother's Motion to Alter.

## I. BACKGROUND

Mother and Father were married in 2006 and separated in 2017. Mother and Father are the parents of Child, who was born in 2014 during the marriage. The Complaint for Divorce was filed on January 30, 2018, and trial was held on October 28 and 29, 2019. Following trial, the Family Court filed: 1) the November

---

[5] We have renumbered the new POEs 13 to 17.

25, 2019 Decision and Order; 2) the December 16, 2019 Divorce Decree; and 3) the March 9, 2020 FOFs/COLs.[6]

In the Divorce Decree, the Family Court:  1) granted the divorce; 2) ordered joint legal and joint physical custody to Father and Mother; 3) set forth the joint physical custody schedule, with exchange times and locations, and set alternating holiday schedules; 4) directed Father and Mother to mutually agree to division of school breaks, and if no agreement could be reached, discussion with a Parenting Coordinator; 5) ordered Father to pay child support to Mother; 6) addressed other issues such as child-related expenses, education and educational expenses, and extracurricular expenses; 7) ordered Father to provide for Child's medical and dental insurance coverage; 8) declined to award alimony to either parent; 9) discussed award of Father and Mother's assets, insurance, and individual debts; 10) waived the equalization payment Mother would have had to pay Father, in lieu of an award of alimony;[7] 11) ordered the parties to file separate taxes for 2019, and going forward; and 12) ordered that each party be responsible for their own attorney's fees and costs.

Mother timely appealed from the Trial Order and Divorce Decree in CAAP-19-0000871 on December 23, 2019, as a self-represented litigant.  Mother submitted the Motion to Alter on December 5, 2019, but it was not heard until March 11, 2020, along with Father's motion to enforce the Divorce Decree.  At the March 11, 2020 hearing, per Mother's request, the hearing on her Motion to Alter was continued to May 20, 2020.  No transcript was requested for the May 20, 2020 hearing.  The Order Re: Post-Judgment Motions filed on June 29, 2020 contains the disposition of the motions from the May 20, 2020 hearing, and reflects that the Family Court took "no further action" and did not render a decision as to Mother's Motion to Alter, citing the pending

---

[6]     The Divorce Decree is substantially similar to the Decision and Order.  The March 9, 2020 FOFs/COLs set forth the Family Court's reasoning.

[7]     As to the equalization payment, the Divorce Decree stated:  "15. Equalization Payment.  In lieu of alimony, [Mother] shall not be required to pay the equalization payment set out in the Property Division Chart attached hereto."

appeal in CAAP-19-0000871. Instead, the Family Court granted Father's motion to enforce the Divorce Decree. On July 29, 2020, under CAAP-20-0000489, Mother filed a Notice of Appeal from the June 29, 2020 Order Re: Post-Judgment Motions.

## II. STANDARDS OF REVIEW

### A. Family Court Decisions

"Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." Hamilton v. Hamilton, 138 Hawaiʻi 185, 197, 378 P.3d 901, 913 (2016) (citing Kakinami v. Kakinami, 127 Hawaiʻi 126, 136, 276 P.3d 695, 705 (2012) (quoting Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006))).

> It is well established that a family court abuses its discretion where "(1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason."

Kakinami, 127 Hawaiʻi at 155-56, 276 P.3d at 724-25 (citations omitted). "[T]he family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal." Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 (citation omitted).

### B. Family Court's Findings of Fact and Conclusions of Law

"The family court's findings of fact are reviewed under the clearly erroneous standard, while the court's conclusions of law are reviewed de novo under the right/wrong standard." Gordon v. Gordon, 135 Hawaiʻi 340, 348, 350 P.3d 1008, 1016 (2015) (citing Kakinami, 127 Hawaiʻi at 136, 276 P.3d at 705)).

> A [finding of fact] is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient

6

> quality and probative value to enable a person of reasonable caution to support a conclusion.

Kakinami, 127 Hawaiʻi at 136, 276 P.3d at 705.

"[W]hen a conclusion of law presents mixed questions of fact and law, we review it under the 'clearly erroneous' standard because the court's conclusions are dependent on the facts and circumstances of each individual case."  JW v. RJ, 146 Hawaiʻi 581, 585, 463 P.3d 1238, 1242 (App. 2020) (citing Estate of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007)).  "A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned."  Id.

### C.   **Statutory interpretation**

"Statutory interpretation is a question of law reviewable de novo."  JD v. PD, 149 Hawaiʻi 92, 96, 482 P.3d 555, 559 (App. 2021) (citation omitted).  In construing statutes, we observe the following principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Id. (citation omitted).

### D.   **Family Court Post-Judgment Motions**

We review a family court's ruling on a Hawaiʻi Family Court Rules (**HFCR**) Rule 59(e) motion under the abuse of discretion standard.  See Tagupa v. Tagupa, 108 Hawaiʻi 459, 465, 121 P.3d 924, 930 (App. 2005) (citation omitted).  "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  Id. (internal quotation marks and citation omitted).

### III. DISCUSSION[8]

A. **Custody Award, POEs 1-8**

1. **The Family Court's award of joint legal and physical custody was not erroneous.**

We first address Mother's contentions in POEs 2-6 that the Family Court's award of joint legal custody was erroneous. In POE 2, Mother challenges FOF 47's finding that: "it would not be in the minor child's best interest if either party has sole legal custody, as the other party would be prohibited from providing input;" and in POE 6, COL 15's conclusion that "it is in the best interest of the Child that the parties shall have joint legal and joint physical custody." In POE 3, Mother claims the Family Court failed to apply the "best interest" factors in HRS § 571-46(b).[9] In POEs 4 and 5, Mother challenges FOFs 59,

---

[8] We have reorganized, consolidated, and restated Mother's points of error for clarity.

[9] HRS § 571-46 (2018), entitled "Criteria and procedure in awarding custody and visitation; best interest of the child," provides in subsection (b) that:

> (b) In determining what constitutes the best interest of the child under this section, the court shall consider, but not be limited to, the following:
>
> (1) Any history of sexual or physical abuse of a child by a parent;
>
> (2) Any history of neglect or emotional abuse of a child by a parent;
>
> (3) The overall quality of the parent-child relationship;
>
> (4) The history of caregiving or parenting by each parent prior and subsequent to a marital or other type of separation;
>
> (5) Each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;
>
> (6) The physical health needs of the child;
>
> (7) The emotional needs of the child;
>
> (8) The safety needs of the child;
>
> (9) The educational needs of the child;

(continued...)

8

62-64, and COL 14,[10] which contain the Family Court's findings

---

[9](...continued)

    (10)   The child's need for relationships with siblings;

    (11)   Each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

    (12)   Each parent's actions demonstrating that they separate the child's needs from the parent's needs;

    (13)   Any evidence of past or current drug or alcohol abuse by a parent;

    (14)   The mental health of each parent;

    (15)   The areas and levels of conflict present within the family; and

    (16)   A parent's prior wilful misuse of the protection from abuse process under chapter 586 to gain a tactical advantage in any proceeding involving the custody determination of a minor. Such wilful misuse may be considered only if it is established by clear and convincing evidence, and if it is further found by clear and convincing evidence that in the particular family circumstance the wilful misuse tends to show that, in the future, the parent who engaged in the wilful misuse will not be able to cooperate successfully with the other parent in their shared responsibilities for the child. The court shall articulate findings of fact whenever relying upon this factor as part of its determination of the best interests of the child. For the purposes of this section, when taken alone, the voluntary dismissal of a petition for protection from abuse shall not be treated as prima facie evidence that a wilful misuse of the protection from abuse process has occurred.

[10]    FOFs 59, 62-64, and COL 14 state as follows:

[(Findings of Fact)]

    59.   The video shows that the minor child did not wish to transition to [Mother].

. . . .

    62.   [Mother] then requested a uniformed police officer to walk up to the minor child to bring the minor child to her.

    63.   There was nothing that prohibited [Mother] from walking to the minor child, who was no longer near [Father].

    64.   The Court finds that said action was not in the best interest of the minor child.

(continued...)

regarding a video showing a time-sharing exchange of Child between the parents at the main police station, and the Court's conclusions regarding the video evidence.  POE 4 also challenges the conclusion that "some of [Mother's] behavior" was "detrimental" to Child in COL 14.

Mother argues that the Family Court erred in COLs 14 and 15, and FOFs 47, 59, and 62-64, because, "[i]nstead of and without applying all of the sixteen statutory factors in HRS § 571-46(b), the family court at COL 14 made vague references to '[Mother]'s behavior' being 'detrimental' to [Child]."  Mother claims the "lack of explanation" shows that there was "some unwritten factor or bias [that] formed a substantial basis" of the Court's custody decision.  Mother asserts that instead of looking at the totality of all of the best interest factors, the Family Court abused its discretion by its "myopic focus on one time-sharing exchange" which occurred pursuant to court order with restrictions imposed by the police station.

The findings in FOFs 59, 62, and 63, and the mixed conclusion of law and fact in FOF 64 regarding the video of the time-sharing exchange, are supported by substantial evidence and not clearly erroneous.[11]  See Gordon, 135 Hawaiʻi at 348, 350 P.3d at 1016; JW, 146 Hawaiʻi at 585, 463 P.3d at 1242.  "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of

_____

[10] (...continued)
. . . .

[(Conclusions of Law)]

14.  The Court finds that some of [Mother's] behavior has been detrimental to the minor child, but the Court further finds that the minor child's need to be with both parents outweighs the effects of [Mother's] actions.

[11]    The video recorded by Mother is 9 minutes, 45 seconds long, and appears to show the parties exchanging Child at the Honolulu Police Department main station.  Child is seen crying and reluctant to walk through the metal detector, from Father outside the security barrier, to Mother seated inside the area past the metal detector, recording the video.  Father comforts Child. Mother is heard repeatedly asking Father to help Child through the metal detector.  Father does not respond, except to hold his hand up in response to Mother who says:  "This is part of the problem - can you help [Child] through?"  Mother tells an officer sitting nearby that she may need assistance to escort Child through the metal detector, but the officer declines.  Father says goodbye and leaves.  The remaining video shows Mother talking to Child.

evidence; this is the province of the trier of fact." <u>Fisher</u>, 111 Hawaiʻi at 46, 137 P.3d at 360 (quoting <u>In re Doe</u>, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001)). The Family Court viewed and weighed the video evidence as factfinder, and we do not disturb its findings on appeal.

The record does not show that the Family Court abused its broad discretion in weighing the best interest factors in determining the award of custody. In determining custody, "the family court is granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight, in determining whether the standard has been met." <u>Inoue v. Inoue</u>, 118 Hawaiʻi 86, 105, 185 P.3d 834, 853 (App. 2008) (quoting <u>Fisher</u>, 111 Hawaiʻi at 50, 137 P.3d at 364). Numerous findings appear pertinent to the factors the Family Court had to consider in its custody determination, including any history of abuse by a parent, the quality of the parent-child relationship, each parent's ability to separate their own needs from the child's needs, each parent's mental health, areas and levels of conflict present in the family, and parental cooperation to implement plans to meet Child's needs. <u>See</u> HRS § 571-46(b)(1), (b)(2), (b)(3), (b)(5), (b)(12), (b)(14), (b)(15). The Court made findings regarding Father's lack of mental health diagnosis or any other issue affecting his ability to parent. FOFs 15, 16, and 17. Abuse was not a concern in this case. FOF 19. The Family Court found the parents had poor communication, difficulty co-parenting in a peaceful manner, with Mother driving much of the conflict. FOFs 22, 46, and 48. Mother quit and refused using the Parenting Coordinator, and failed to respond to Father's requests to discuss the issue. FOFs 49 and 50. The Court noted there were incidents where Mother would not share information with Father and said it was because Father did not ask. FOF 51. Mother told Child that she feared Father. FOF 52. Mother's actions in the time-sharing video were "not in the best interest" of Child. FOFs 59-64. COL 14, containing the Court's finding and conclusion that some of Mother's behavior was "detrimental" but nevertheless outweighed by Child's need to be with both parents, is actually a mixed FOF and COL subject to the

clearly erroneous standard of review.  See JW, 146 Hawaiʻi at 585, 463 P.3d at 1242.  The Court's finding in COL 14 that Mother's behavior was "detrimental" to Child is supported by the unchallenged findings above[12] and the challenged video findings in FOFs 59, and 62-64, all of which were within the Court's province as the factfinder.  The record shows the Court weighed the facts that it found and applied the best interest factors in arriving at its conclusion that Child's "need to be with both parents outweigh[ed]" the effects of Mother's "detrimental" actions.  COL 14.  Thus, COL 14 was not wrong.

The family court "is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal." Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360.  On this record, the Court's conclusion in FOF 47, that it would not be in Child's best interest if either parent had sole legal custody because the other parent would not have an opportunity for input, and ultimate conclusion in COL 15 that joint legal and physical custody of Child was in Child's best interest, were not erroneous.  See Gordon, 135 Hawaiʻi at 348, 350 P.3d at 1016.

### 2. A joint custody award with a tie-breaking provision is not precluded by statute.

We next address Mother's contentions in POEs 1, 7, and 8, related to the joint custody award.  In these POEs, Mother challenges FOF 20, and the second sentence of FOF 47, which state:

> 20.  Although Dr. Acklin's report recommended what was equivalent to sole legal custody to [Mother] or alternatively joint legal custody with tie breaking authority to [Mother], he testified that he would agree that the parties could have joint legal custody so long as there was a neutral body that could assist them with any disputes.
>
> . . . .
>
> 47.  It would not be in the minor child's best interest if either party has sole legal custody, as the other party would be prohibited from providing input.  The

---

[12]  Unchallenged findings of fact are binding upon appeal.  In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002).

> Court cannot order joint legal custody with tie breaking authority.

(Emphasis added).

FOF 20 is a recitation of Dr. Marvin Acklin's (**Dr. Acklin**) report and testimony as custody evaluator, which Mother disagrees with, but does not specifically challenge. As FOF 20 appears to accurately set forth Dr. Acklin's recommendation and testimony, it is not clearly erroneous. Gordon, 135 Hawaiʻi at 348, 350 P.3d at 1016.

In POEs 1 and 2, Mother contends that the Family Court erred in FOF 47 by ruling that the court "could not order joint legal custody with tie-breaking authority." In POEs 7 and 8, Mother challenges FOF 20 that the parties could have joint legal custody so long as there was a neutral body to assist them in disputes; and Mother opposes the imposition of a costly and burdensome dispute resolution process that Mother says she could not afford.[13]

Mother argues that the Family Court made an erroneous "conclusion of law about tie-breaking authority that is reviewable *de novo*," when it stated in FOF 47 that it could not order joint legal custody with tie-breaking authority. Mother asserts that the Family Court was not barred, under the

---

[13] As to custody and timesharing of Child, the Divorce Decree provided:

> 6. Custody and Timesharing. The parties shall have joint legal and joint physical custody.
>
> For joint legal custody, the parties shall be required to discuss any legal issues via Our Family Wizard. A party shall have forty-eight (48) hours to respond regarding a legal custody issue. If there is no response within forty-eight (48) hours, then the non-responsive party will be considered to be in agreement with the legal custody decision proffered.
>
> In the event of an impasse regarding child-related issues, [Mother] and [Father] shall attempt to resolve the issue through Mediation Center of the Pacific or other mutually agreed upon mediator. If the parties are unable to resolve the issue through mediation, then they shall retain the services of a Parenting Coordinator if they are unable to agree on any child-related issues.
>
> [Mother] and [Father] shall share equally the cost of mediation and the Parenting Coordinator.

"governing statutory scheme" of HRS § 571-46[14] or HRS § 571-46.1,[15] from awarding tie-breaking authority to one parent in a joint custody award; and that the Family Court could do so as a "court of equity" under HRS § 571-3.[16]  Mother urges that the

_____

[14]     HRS § 571-46(a)(1) specifies the legal criteria for a custody award, and subsection (a)(4) provides for an investigation and report by a child custody evaluator to aid the court:

> (a) . . . .  <u>In awarding the custody, the court shall be guided by the following standards, considerations, and procedures</u>:
>
>> (1)  <u>Custody should be awarded to either parent or to both parents according to the best interests of the child</u>, and the court also may consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child;
>
> . . . .
>
>> (4)  Whenever good cause appears therefor, the court may require an investigation and report concerning the care, welfare, and custody of any minor child of the parties.  When so directed by the court, investigators or professional personnel attached to or assisting the court, hereinafter referred to as child custody evaluators, shall make investigations and reports that shall be made available to all interested parties and counsel before hearing . . . .

(Emphases added).

[15]     HRS § 571-46.1 (2018), entitled "Joint custody," provides:

> (a)  <u>Upon the application of either parent, joint custody may be awarded in the discretion of the court</u>.  For the purpose of assisting the court in making a determination whether an award of joint custody is appropriate, the court shall, upon the request of either party, direct that an investigation be conducted pursuant to the provisions of section 571-46(a)(4).
>
> (b)  For the purposes of this section, "joint custody" means an order awarding legal custody of the minor child or children to both parents and providing that physical custody shall be shared by the parents, pursuant to a parenting plan developed pursuant to section 571-46.5 . . . .

(Emphasis added).  The child custody evaluator's report is also used by a court to determine the appropriateness of a joint custody award.  <u>See</u> HRS § 571-46(a)(4).

[16]     HRS § 571-3 (2018), entitled "Family courts, divisions of circuit courts," provides:

> The family courts shall be divisions of the circuit courts of the State and shall not be deemed to be other courts as that term is used in the State Constitution. . . .  In any case in which it has jurisdiction <u>the court shall exercise</u>

(continued...)

14

Family Court has "broad powers," "inherent authority[,] and discretion to include tie-breaking provisions in a joint legal custody award under appropriate circumstances involving parents who cannot communicate effectively, where not otherwise constrained by statute."

To support her argument, Mother primarily relies on a Maryland case, Santo v. Santo, 141 A.3d 74, 89 (Md. 2016), in which the Maryland Court of Appeals held:

> [A] court of equity ruling on a custody dispute may, under appropriate circumstances and with careful consideration articulated on the record, grant joint legal custody to parents who cannot effectively communicate together regarding matters pertaining to their children. In doing so, the court has the legal authority to include tie-breaking provisions in the joint legal custody award.

(Emphasis added). In Santo, the father challenged the trial court's award of joint custody with tie-breaking provisions as illegal, because it violated the custody statute as it was "neither single nor joint, but a hybrid of the two—an option not set forth in the statute." Id. at 83. The Santo Court explained that the lower court's authority to award custody did not derive solely from statute, but also from common law, and the "broad and inherent authority of a court exercising its equitable powers to determine child custody." Id. at 84 (quoting Taylor v. Taylor, 508 A.2d 964, 968 (Md. 1986)).[17] The Court considered the propriety of "tie-breaking provisions" in joint custody awards that "grant one parent the authority to make a decision about a matter affecting the child when the parents cannot agree." Id. at 76. The Santo Court explained:

> In a joint legal custody arrangement with tie-breaking provisions, the parents are ordered to try to decide together matters affecting their children. When, and only

---

[16](...continued)
general equity powers as authorized by law.

(Emphasis added).

[17]     In Taylor, decided thirty years prior, the Maryland Court of Appeals held that "an award of joint custody was a permissible exercise of a trial court's general equity powers" and the "most important factor for a court to consider before awarding joint custody is the capacity of the parents to communicate and to reach shared decisions affecting a child's welfare." Santo, 141 A.3d at 76 (citing Taylor, 508 A.2d at 964).

> when the parties are at an impasse after deliberating in good faith does the tie-breaking provision permit one parent to make the final call. Because this arrangement requires a genuine effort by both parties to communicate, it ensures each has a voice in the decision-making process.

Id. at 81. Because the Maryland custody statute authorized joint custody without any limitations, and because the Santo Court considered joint custody with tie-breaking provisions to be a form of joint custody, it held that such a custody award was not precluded by statute. Id. at 84.

The Santo Court considered authority from other jurisdictions that have affirmed such provisions granting one parent "tie-breaking authority," or "final decision-making authority," in light of a family court's broad discretionary powers. See id. at 81-83 (citing Ronny M. v. Nanette H., 303 P.3d 392, 405 (Alaska 2013) ("The court's approach [awarding joint legal custody with final decision-making authority to mother] is reasonably intended to encourage both parents to communicate and attempt to make decisions about their children . . . ."); State on behalf of Maddox S. v. Matthew E., 873 N.W.2d 208, 219 (Neb. Ct. App. 2016) ("We also point out that the court maintained the goal of 'mutual agreement' between the parties . . . .; only now, the final say as to certain major issues rests with the designated parent if they cannot otherwise agree."); Shea v. Metcalf, 712 A.2d 887, 891 (Vt. 1998) ("By avoiding an 'all or nothing approach,' the order keeps both parents in the role of active parenting, takes full advantage of their individual strengths, and avoids awarding either parent responsibility for which he or she is not suited.")).

Other jurisdictions have affirmed provisions granting tie-breaking or final decision-making authority to one parent in shared or joint legal custody situations, as within the family court's broad discretionary powers. See, e.g. Nicaise v. Sundaram, 432 P.3d 925, 928 (Ariz. 2019) (providing that vesting final decision-making authority in one parent may be appropriate in instances where "the parents cannot reach a joint agreement in good faith," and such award of joint legal decision-making with one parent having final authority does not "necessarily give[]

that parent sole legal decision-making authority"); Cassady v. Signorelli, 56 Cal. Rptr. 2d 545, 549 (Cal. Ct. App. 1996) (affirming the trial court's ruling that father should have the "final say" as to child's health care decisions in the event of disagreement between the parties due to trial court's "very extensive discretion" as to best interests of the child); Lopes v. Ferrari, 204 A.3d 1254, 1260-61 (Conn. App. Ct. 2019) (affirming the trial court's grant to mother of primary physical custody and "final decision-making authority" on major issues); Macklin v. Johnson, 268 A.3d 1273, 1281 (D.C. 2022) (holding the trial court did not abuse its discretion by granting mother "final decision-making authority" based on practical issue of parents' inability to reach joint decisions about the children's welfare); Rembert v. Rembert, 674 S.E.2d 892, 894 (Ga. 2009) (concluding it was unlikely the parents would agree on the children's education and it was necessary to designate a "final decision-maker" and no abuse of discretion where trial court selected primary custodial parent as that decision-maker); Klein v. Klein, 208 A.3d 802, 805 n.2 (Me. 2019) (citations omitted) ("[A] court is authorized to award a combination of shared and allocated parental rights by granting one parent explicitly final decision-making authority when necessary for the best interest of a child."); D.B. v. J.B., 144 N.E.3d 911, 922 (Mass. App. Ct. 2020) (affirming grant of "final decision-making authority" to mother for children's medical needs based on judge's discretion); S.K.B.-G. by and through J.P.G. v. A.M.G., 532 S.W.3d 231, 240-41 (Mo. Ct. App. 2017) (affirming trial court's order awarding joint legal custody of the child and vesting "final decision-making authority" with father in event the parties could not agree); Prohaszka v. Prohaszka, 958 N.Y.S.2d 508, 509 (N.Y. App. Div. 2013) (amending order as to mother's primary physical custody of the children to give mother "final decision-making authority" after consulting with father); Ward v. Halprin, 853 S.E.2d 7, 9 (N.C. Ct. App. 2020) (upholding trial court's "substantial latitude" in fashioning a joint legal custody arrangement such as "final decision-making authority" on major issues involving the children that was given to mother based on the trial court's

findings); <u>Glidewell v. Glidewell</u>, 869 N.W.2d 796, 808 (Wis. Ct. App. 2015) (holding that circuit court did not erroneously exercise its discretion in ordering joint custody with final decisions as to medical matters to mother, and "final decision-making authority" as to education to father, "after the parties have conferred").

Here, the Family Court concluded that tie-breaking was not an option available to it, and did not consider it.[18] The Family Court's statement in FOF 47 that: "[t]he Court cannot order joint legal custody with tie breaking [sic] authority" is a conclusion of law reviewable *de novo*. <u>See</u> <u>Doe</u>, 95 Hawaiʻi at 190, 20 P.3d at 623. We conclude that the applicable statutes in Hawaiʻi -- HRS § 571-3, HRS § 571-46, and HRS § 571-46.1 -- do not preclude a family court from granting tie-breaking authority to one parent in a joint legal custody award if such a provision

---

[18] The transcript also reflects that the Family Court believed it could not order tie-breaking authority:

> Q [FATHER'S COUNSEL]: Do you think that you should be the only one making the decision in the event of a disagreement?
>
> A [MOTHER]: No. I don't think I'm the only one. I think that there should be discussion, and that's ultimately what I had proposed numerous times.
>
> THE COURT: <u>I want to make sure everybody is aware. I cannot order tiebreaking authority. So I don't know why we even discuss it. It's either joint or sole.</u> So you mentioned it too.
>
> [MOTHER'S COUNSEL]: I know.
>
> THE COURT: It's in your position even. So let's --
>
> [MOTHER'S COUNSEL]: Well, we were hoping at some point there might be a stip still.
>
> THE COURT: <u>As long as everybody's clear, I can't order it</u>.
>
> [FATHER'S COUNSEL]: The reason I'm discussing it now, Your Honor, is just to essentially demonstrate what was taking place during the pendency of this litigation.
>
> THE COURT: No. I understand that. But when you're talking about what the decree is going to look like, <u>I can't do tiebreaking</u>.
>
> [FATHER'S COUNSEL]: Understood.

(Emphases added).

is in the best interests of the child.  HRS § 571-46(a), setting forth the best interests of the child criteria for custody determinations, does not have language that would preclude an award of joint custody with tie-breaking authority to one parent. The joint custody statute, HRS § 571-46.1(a), provides for joint custody awards "in the discretion of the court."  HRS § 571-46.1(b) provides:

> For the purposes of this section, "joint custody" means an order awarding legal custody of the minor child or children to both parents and providing that physical custody shall be shared by the parents, pursuant to a parenting plan developed pursuant to section 571-46.5, in such a way as to assure the child or children of frequent, continuing, and meaningful contact with both parents; provided, however, that such an order may award joint legal custody without awarding joint physical custody.

A "parenting plan" under HRS § 571-46.5[19] may include provisions related to "[p]arental decision-making" and methods "for resolving disputes."  HRS § 571-46.5(c)(3) and (c)(10); see Hollaway v. Hollaway, 133 Hawaiʻi 415, 422 n.6, 329 P.3d 320, 327 n.6 (App. 2014), overruled on other grounds by Waldecker v. O'Scanlon, 137 Hawaiʻi 460, 375 P.3d 239 (2016) (noting that in

---

[19]     HRS § 571-46.5 (2018) provides:

(a)     For every action that includes a contested custody of children, both parties or both parents shall develop either a mutually agreed-upon general parenting plan or separate individually-desired parenting plan, and file the plan at the outset of the action.

. . . .

(c)     A detailed parenting plan may include, but is not limited to, provisions relating to:

(1)     Residential schedule;

(2)     Holiday, birthday, and vacation planning;

(3)     Parental decision-making and responsibility;

(4)     Breastfeeding, if applicable;

(5)     Information sharing and access;

(6)     Relocation of parents;

(7)     Telephone access and other means of communication;

(8)     Right of first refusal procedures;

(9)     Transportation; and

(10)    Methods for changing or enforcing the parenting plan and for resolving disputes.

(d)     If the parties cannot agree on a parenting plan, the court may:

(1)     Order the parties to participate in alternative dispute resolution and in counseling with a person with professional experience in child custody or parenting issues, or with other appropriate education, unless there is a finding of family violence; and

(2)     Develop and file a detailed parenting plan when requested by either of the parties or parents.

The March 9, 2020 FOFs/COLs do not reflect whether a parenting plan under HRS § 571-46.5 was used in determining joint custody.  The record does not indicate that a "mutually agreed-upon" parenting plan or "separate individually-desired" parenting plans were filed "at the outset of the action" under HRS § 571-46.5(a).

cases where joint custodial parents reach an impasse in decision-making regarding their child, preliminary alternatives such as a parenting plan could lead to a better-informed resolution of immediate issues, as well as serving as a means for the parents to develop co-parenting skills that would best serve the child). It is well-recognized that the family courts possess "wide discretion" in making decisions. Fisher, 111 Hawaiʻi at 46, 137 P.3d 355 at 360.

Here, Dr. Acklin recommended that "the parties share physical custody," and that the Court order "shared legal custody with [Mother] having tie breaking [sic] authority . . . ." FOF 12. The Family Court found that Mother and Father did not communicate effectively and blamed each other for their inability to communicate. See FOFs 21 and 46. Several e-mails in evidence reflected the parties' difficulties with communicating in a "peaceful and co-parenting manner." FOF 48. Although Dr. Acklin's report recommended "what was equivalent to sole legal custody to [Mother] or alternatively joint legal custody with tie breaking [sic] authority to [Mother]," Dr. Acklin testified that the parties "could have joint legal custody" as long as "there was a neutral body that could assist them with any disputes." FOF 20. Even though Dr. Acklin had recommended joint legal custody with tie-breaking authority to Mother, the Family Court determined that it "cannot order joint legal custody with tie breaking [sic] authority" and imposed joint legal custody with a mandatory dispute resolution process. FOFs 12 and 47. Thus, the record reflects that the Family Court rejected tie-breaking authority as a matter of law, and ordered a dispute resolution process modeled after Dr. Acklin's testimony that the parties "could have joint legal custody so long as there was a neutral body that could assist them with any disputes." FOF 20.

Under the circumstances of this case, we conclude that the Family Court was not precluded from ordering joint legal custody with tie-breaking authority to one parent, based on its broad discretion, if the Court determined that this was in Child's best interests. See Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360; Santo, 141 A.3d at 84. FOF 47 reflects that the Court

wanted to avoid a situation where one parent was prohibited from providing input. An approach awarding parents joint custody with one parent having tie-breaking authority can be structured to encourage both parties to communicate and to require both parents to attempt to make decisions together. See Santo, 141 A.3d at 81. Joint custody with tie-breaking authority is an alternative that addresses the Court's expressed concern of avoiding a situation where one parent is excluded from having input. In light of the above, we vacate the Family Court's orders to the extent it held it could not order joint legal custody with tie-breaking authority and regarding the dispute resolution process and costs set forth in the Divorce Decree, which were raised in POEs 1, 7, and 8. We remand for further proceedings on these issues consistent with this opinion.

## B. Equalization payment, POE 11

Mother challenges FOF 101, and COL 31,[20] where the Family Court imposed the "inequitable equalization payment" based on Father's "late-disclosed" and "unsubstantiated" debts, which consisted of (1) a personal loan for attorneys' fees and costs claimed by Father in an asset and debt statement dated one week before trial; and (2) a student loan that was not supported by corroborating evidence. Mother did not object to the testimony or exhibits regarding these debts at trial,[21] and her contention

---

[20] FOF 101 states: "[Father]'s Asset and Debt Statement dated September 19, 2019 was used to create the PDC with regards to [Father]'s assets and debts. (See [Father]'s Exhibit "F".)" COL 31 states: "31. The Court finds that per the PDC [Mother] would owe [Father] an equalization payment of $20,871.48."

[21] The trial transcript reflects the following:

Q [FATHER'S COUNSEL]: Okay. You also have a -- a personal loan listed; correct?

A [FATHER]: Yes.

Q: In the amount of $75,000; correct?

A: Yes.

Q: Is that a -- who is that loan from?

A: That loan is from my sister and her husband.

(continued...)

is waived.  See Kawamata Farms, Inc. v. United Agr Products, 86 Hawaiʻi 214, 248, 948 P.2d 1055, 1089 (1997) ("The general rule is that an issue which was not raised in the lower court will not be considered on appeal.") (citations and internal quotation marks omitted)).

---

[21](...continued)

> Q:  Okay.  When did the loan -- when was the loan initiated?
>
> A:  It was initiated in January of -- January, February of 2018.
>
> Q:  Okay.  And was that at the commencement of the -- this litigation?
>
> A:  Yes.
>
> Q:  Okay.  And has that loan been extended for purposes of litigation fees?
>
> A:  Yes, it has.
>
> Q:  Okay.  And has it also helped you meet your monthly deficiency -- meet your expenses?
>
> A:  It has and --
>
> Q:  Okay.  Also you have here listed a student loan; correct?
>
> A:  Yes.
>
> Q:  And this has not been included on your prior income and expense statements; correct?
>
> A:  Correct.
>
> Q:  And was that an unintentional omission?
>
> A:  It was, yeah.  And it's on auto pay so it's not something I really think about.
>
> Q:  Okay.
>
> A:  It's a --
>
> Q:  Comes out of your account?  Okay.  But that is an accurate reflection of your outstanding balance?
>
> A:  Yes, it is.
>
> Q:  Correct?
>
> Your Honor, I'd like to move Exhibit F [Father's Asset & Debt Statement] into evidence.
>
> THE COURT:  Exhibit F is received.

(Emphases added).

### C.    Spousal Support, POE 12

In POE 12, Mother contends that the Family Court erred in making COLs 22 and 32,[22] where the Court "denied spousal support" to Mother as an "offset" for the $20,871.48 equalization payment in COL 31, without first calculating the amount of spousal support to which Mother was entitled.  Mother's contention has merit.

"We review the family court's final division and distribution of the estate of the parties under the abuse of discretion standard, in view the factors set forth in HRS § 580-47 and partnership principles."  Gordon, 135 Hawaiʻi at 348, 350 P.3d at 1016 (citations omitted).

When deciding the issue of spousal support:

> The first relevant circumstance is the payee's need.  What amount of money does he or she need to maintain the standard of living established during the marriage?  The second relevant circumstance is the payee's ability to meet his or her need without spousal support.  Taking into account the payee's income, or what it should be, including the net income producing capability of his or her property, what is his or her reasonable ability to meet his or her need without spousal support?  The third relevant circumstance is the payor's need.  What amount of money does he or she need to maintain the standard of living established during the marriage?  The fourth relevant circumstance is the payor's ability to pay spousal support.  Taking into account the payor's income, or what it should be, including the income producing capability of his or her property, what is his or her reasonable ability to meet his or her need and to pay spousal support?

Wong, 87 Hawaiʻi at 485, 960 P.2d at 155 (citations and brackets omitted).

HRS § 580-47(a) (2018) requires the family court to consider the following criteria in deciding spousal support: "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, . . . and all other circumstances of the case."  HRS § 580-47(a) further requires the court to consider a list of thirteen additional factors.  Id.

---

[22]    COL 22 states:  "Neither party shall be required to provide support or maintenance for the other party."  COL 32 states:  "In lieu of alimony, [Mother] shall not be required to pay the equalization payment set out in the PDC."

While the record reflects some findings pertinent to the statutory considerations such as the parties' financial resources (see FOFs 76, 79, and 83 relating to each party's income), ability of Mother to meet her needs independently (see FOF 89 regarding Mother's work history and desire for further education, and FOFs 95 and 96 regarding changes in Mother's earning capacity), the findings and conclusions do not reflect an assessment of the statutory factors and a determination of the factual inquiries set forth in Wong, which the Family Court itself quoted in COLs 6 and 7.  See I.S. v. P.S., Nos. 30179, CAAP-10-0000082, 2013 WL 4458889, at *8 (App. Aug. 21, 2013) (mem.) (holding that the family court "abused its discretion in awarding Wife $2,000 a month in alimony without some indication that it had considered the factors pursuant to HRS § 580-47(a) or made the relevant factual determinations.").  In light of this record, the Family Court's conclusions in COLs 22 and 32, where the Court found neither party should provide support or maintenance for the other party and the Court waived Mother's equalization payment in lieu of alimony, are erroneous and thus vacated because the record does not indicate that the Family Court considered the HRS § 580-47(a) factors or made the relevant factual determinations set out in Wong.  See id.; Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360.  On remand, the Family Court must conduct the statutory analysis under HRS § 580-47(a) and the Wong inquiries to determine whether or not Mother should receive spousal support, and if so, determine the appropriate amount.

   D.   **Exhibits, POEs 9-10**

        Mother contends in POE 9 that the Family Court erred by refusing to allow Mother to introduce stipulated exhibits due to the Court's "personal policy."  In POE 10, Mother challenges FOF 108, which states:  "Each side chose to withdraw several exhibits at the end of trial."  Mother argues that the Family Court abused its discretion in "deeming as withdrawn" the majority of Mother's trial exhibits which were not objected to by Father, pursuant to the Family Court's "personal policy."  The Family Court stated in unchallenged FOF 38, however, that the Court "does not have a policy, nor is there a rule that the Court will automatically

25

accept stipulations made by the parties."  Mother did not object or request that any particular exhibit be admitted, and her contentions are waived.[23]  See Kawamata Farms, 86 Hawaiʻi at 248, 948 P.2d at 1089.

### E.    CAAP-20-0000489, Motion to Alter
#### 1.    Jurisdiction in CAAP-20-0000489

Father contends that the appeal in CAAP-20-0000489 of the June 29, 2020 Order Re: Post-Judgment Motions should be dismissed for lack of jurisdiction, due to Mother's untimely filing of her Notice of Appeal on July 29, 2020.  Father argues that because there was no disposition of Mother's December 5,

---

[23]    The October 29, 2019 transcript provides:

> THE COURT:  You want me to read what was received?  Because you guys are done presenting at this point.
>
> [FATHER'S COUNSEL]:  Yeah.  That's fine.  I can run through it.  I just want to make sure that I have mine all --
>
> THE COURT:  And with that being said, the remainder of the exhibits that have not been received, are they being withdrawn?
>
> [FATHER'S COUNSEL]:  Your Honor, could we offer MM and NN as evidence as [Father] testified to those?
>
> THE COURT:  MM and NN are received.
>
> ([Father's] Exhibits MM & NN were received in evidence.)
>
> [FATHER'S COUNSEL]:  Thank you, Judge.  Other than that, withdrawn.
>
> [MOTHER'S COUNSEL]:  Your Honor, I would -- I would respectfully inquire when the Court's policy changed on counsel being able to stipulate.  I mean, especially when we have a short time for trial and we get jammed --
>
> THE COURT:  It's my personal policy.
>
> [MOTHER'S COUNSEL]:  I understand.  Thank you.
>
> THE COURT:  Okay.  All right.  So any exhibits that were not received will be withdrawn.  If I could have an expedited order, you can just leave it at the bailiff's desk just stating the deadline of the written closing please.
>
> [FATHER'S COUNSEL]:  I'm happy to do that, Your Honor.
>
> THE COURT:  All right.  Thank you.
>
> (End of proceedings.)

(Emphases added).

2019 Motion to Alter within 90 days of its filing under Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(a)(3),[24] Mother was required to file her Notice of Appeal "within 30 days of the expiration of the 90-day period" in HRAP Rule 4(a)(3). Father asserts that Mother's December 5, 2019 Motion to Alter was accordingly "deemed denied" after 90 days, and Mother's July 29, 2020 Notice of Appeal in CAAP-20-0000489 was "extremely untimely." We conclude that Mother's appeal is timely and that we have appellate jurisdiction to review the June 29, 2020 Order Re: Post-Judgment Motions.

> **a. Mother's Motion to Alter filed on December 5, 2019 was a timely filed motion under HFCR Rule 59(e).**

HRAP Rule 4(a)(3) applies to "timely" filed post-judgment motions. The Motion to Alter was filed on December 5, 2019, within ten days of the November 25, 2019 Trial Order,

---

[24] HRAP Rule 4(a)(3), entitled "Time to appeal affected by post-judgment motions," provides in pertinent part:

> If any party files a timely motion . . . to reconsider, alter or amend the judgment or order, . . . and court or agency rules specify the time by which the motion shall be filed, <u>then the time for filing the notice of appeal is extended for all parties until 30 days after entry of an order disposing of the motion. The presiding court or agency in which the motion was filed shall dispose of any such post-judgment motion by entering an order upon the record within 90 days after the date the motion was filed. If the court or agency fails to enter an order on the record, then, within 5 days after the 90th day, the clerk of the relevant court or agency shall notify the parties that, by operation of this Rule, the post-judgment motion is denied and that any orders entered thereafter shall be a nullity</u>. The time of appeal shall run from the date of entry of the court or agency's order disposing of the post-judgment motion, if the order is entered within the 90 days, or from the filing date of the clerk's notice to the parties that the post-judgment motion is denied pursuant to the operation of the Rule.
>
> The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order.
>
> The 90-day period shall be computed as provided in Rule 26 of these Rules.

(Emphasis added).

pursuant to the ten-day deadline in HFCR Rule 59(e),[25] and thus was timely filed. Both Mother and Father agree that the Motion to Alter was filed on December 5, 2019, and not January 9, 2020 as indicated in FOF 5 in the September 21, 2020 FOFs/COLs.[26] In DL v. CL, 146 Hawaiʻi 415, 421, 463 P.3d 1072, 1078 (2020), the Hawaiʻi Supreme Court held that "the family court clerk's acceptance and date stamping of a HFCR Rule 59 motion as 'received' was 'a filing that satisfied the jurisdictional requirements of HFCR Rule 59(a) and (e).'" Here, the Motion to Alter had a "received" stamp of December 5, 2019 by the family court clerk but was not file-stamped until January 9, 2020. Under DL, the "received" stamp date of December 5, 2019 constituted filing of the motion on that date, and **not** January 9, 2020. Id. We agree with Mother's contention in POE 16 that the Family Court clearly erred when it found the motion was filed on the latter date in FOF 5. See Gordon, 135 Hawaiʻi at 348, 350 P.3d at 1016.

### b. This court has jurisdiction to review the Order Re: Post-Judgment Motions.

HRAP Rule 4(a)(3) required the Family Court to dispose of Mother's December 5, 2019 Motion to Alter "within 90 days after the date the motion was filed." The Order Re: Post-Judgment Motions that took no action on the Motion to Alter was not issued until June 29, 2020, which is beyond the 90-day period specified by HRAP Rule 4(a)(3). HRAP Rule 4(a)(3) requires that, if the court fails to enter an order disposing of the motion within 90 days, then "within 5 days after the 90th day," the

---

[25] HFCR Rule 59(e), entitled "Motion to reconsider, alter or amend a judgment or order," provides in relevant part: "[A] motion to reconsider, <u>alter</u> or amend a judgment or order is not required but <u>may be filed no later than 10 days after entry of the judgment or order</u> and shall be a non-hearing motion, except that the court in its discretion may set any matter for hearing." (Emphases added).

[26] FOF 5 states: "5. [Mother], via counsel, <u>filed her Motion to Alter</u> or Amend Decision and Order After Trial Filed November 25, 2019 and Stay Execution of Order and Hearing Pursuant to Rules 59(e) and 62(b), Hawaii Family Court Rules, <u>on January 9, 2020</u>." (Emphases added).

court clerk "shall notify the parties that, by operation of this Rule, the post-judgment motion is denied and that any orders entered thereafter shall be a nullity."

Here, the Family Court did not dispose of Mother's Motion to Alter within 90 days of the filing of the motion, **and** the clerk of the court also failed to issue a notice by the 95th day, informing the parties that the motion was denied pursuant to HRAP Rule 4(a)(3) and that any order entered thereafter was a nullity. The rule "does not contemplate this dual failure of both the court and the court's clerk to execute the requirements of the rule." Sanchez v. Sanchez, NO. CAAP-17-0000407, 2021 WL 4777103, at *8 (App. Oct. 13, 2021) (SDO). Under the circumstances of this case, we conclude that the Order Re: Post-Judgment Motions was not a nullity for purposes of determining whether the appeal was timely because the required clerk's notice under the rule was never provided. If we interpreted the rule as Father urges us to, that after 90 days there was a "deemed denial" of Mother's Motion to Alter for purposes of whether an appeal was timely, it "renders superfluous the requirement that the clerk provide notice to the parties of the deemed denial." Id. For purposes of the deadline to appeal, the Motion to Alter was not "deemed" denied under HRAP Rule 4(a)(3) where no clerk's notice was issued. Rather, we conclude that the Order Re: Post-Judgment Motions constituted the **disposition** of Mother's post-judgment Motion to Alter. See HRAP Rule 4(a)(3) ("The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order."). Thus, Mother's appeal is timely because her earlier, timely-filed Notice of Appeal from the Divorce Decree in CAAP-19-0000871 is deemed to appeal the **disposition** of her timely filed Motion to Alter. See id.; Sanchez, 2021 WL 4777103, at *8.

### 2.    **Motion to Alter, POEs 14 and 15**

Mother's contentions in POEs 14 and 15, that the Family Court erred in COLs 5-7 in ruling that it could not consider the Motion to Alter because a Notice of Appeal had been filed, have merit.  COLs 5-7 in the September 21, 2020 FOFs/COLs, state:

> 5.  It is well settled that "once a party files a notice of appeal, the lower court is generally divested of jurisdiction to proceed further on the matter." <u>Kakinami v. Kakinami</u>, 127 Hawaiʻi 126, 143, 276 P.3d 695, 712 (2012) (citing <u>Lowther v. Lowther</u>, 99 Hawaiʻi 569, 578, 57 P.3d 494, 503 (App. 2002)).  While a case is up on appeal, the Court may enforce a prior order, but may not modify the prior order.  <u>Id</u>.
>
> 6.  The Family Court was divested of jurisdiction to hear [Mother's] Motion to Alter or Amend Decision and Order After Trial Filed November 25, 2019 and Stay Execution of Order and Hearing Pursuant to Rules 59(e) and 62(b), Hawaii Family Court Rules, filed on January 9, 2020.
>
> 7.  It was proper for the Family Court to take no further action on [Mother's] January 9, 2020 Motion.

Mother argues that, although courts are generally divested of jurisdiction upon the filing of a notice of appeal, pursuant to HRAP Rule 4(a)(3), the Family Court "retained jurisdiction to alter or amend the decree for another 90 days . . . ."

The Hawaiʻi Supreme Court has explained that:

> The general rule is that courts are divested of jurisdiction upon the filing of a notice of appeal.  <u>Kakinami</u>, 127 Hawaiʻi at 143, 276 P.3d at 712.  However, in <u>Buscher v. Boning</u>, 114 Hawaiʻi 202, 221, 159 P.3d 814, 833 (2007), this court held that the 1999 version of HRAP Rule 4(a)(3) "supersedes the line of cases standing for the proposition that the circuit court lacks jurisdiction to award costs after a notice of appeal is filed" and "provides that the court has 90 days to dispose of a post-judgment motion to reconsider, vacate, or alter the judgment, or seeks attorney's fees or costs, regardless of when the notice of appeal was filed."  Although HRAP Rule 4(a)(3) has since been amended, the language providing that a court has 90 days to dispose of a timely post-judgment motion has not changed substantively.

<u>DL</u>, 146 Hawaiʻi at 421-22, 463 P.3d at 1078-79 (brackets, internal quotation marks, and footnotes omitted).  Here, as noted <u>supra</u>, the Motion to Alter filed December 5, 2019 was a timely filed post-judgment motion.  The Family Court retained jurisdiction to consider it, even though a Notice of Appeal had

been filed on December 23, 2019.  The Family Court erred in
concluding in COLs 5-7 that it lacked jurisdiction over the
motion because an appeal had been filed.  See id.; HRAP Rule
4(a)(3).

Accordingly, we vacate the Order Re: Post-Judgment
Motions to the extent the Family Court took no further action on
the Motion to Alter, and remand for the Family Court to consider
the motion on its merits.  In view of this resolution, it is
unnecessary to address Mother's remaining contentions in POEs 13
and 17 regarding the merits of the Motion to Alter.

## IV.  CONCLUSION

For the foregoing reasons, as to CAAP-19-0000871, we
vacate in part (1) the Family Court of the First Circuit's
November 25, 2019 Decision and Order Re: Trial, Child Support
Guidelines Worksheet, and Property Division Chart; and (2) the
December 16, 2019 Decree Granting Absolute Divorce and Awarding
Child Custody, and remand for further proceedings consistent with
this Opinion, as follows:

> (1)  The award of joint custody is affirmed, but the
> orders regarding the dispute resolution process and
> costs are vacated;
> (2)  The award of joint custody is remanded to
> determine whether a grant of tie-breaking authority
> is appropriate as part of the joint custody award; and
> (3)  The issue of spousal support is remanded to
> determine whether spousal support should be awarded,
> and if so, a determination of the amount.

We otherwise affirm in part as to the remainder.

As to CAAP-20-0000489, we vacate in part the June 29,
2020 Order Re: Plaintiff's Motion to Amend or Alter Decision and
Order and Granting Defendant's Motion to Enforce Decree to the

extent it did not address the Plaintiff's Motion, and remand for consideration of that motion on the merits, consistent with this Opinion.

On the briefs:

Sharla A. Manley
for Plaintiff-Appellant

Rosa Flores
(Law Office of Rosa Flores)
for Defendant-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge