**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000072
30-JUN-2022
07:57 AM
Dkt. 148 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

AARON ARBLES, ROBERT BAILEY, REUBEN CHUN, MICHAEL
GAHAN, MICHAEL HAYASHIDA, GARRET KOMATSU,
GERALD KOSAKI, STEVE LOYOLA, JERRY LUM,
TY MEDEIROS, PAUL PAIVA, RAYMOND ROWE,
JR., WARREN SUMIDA, and ALVIN TOBOSA,
Appellants-Appellants,
v.
MERIT APPEALS BOARD, COUNTY OF HAWAIʻI, MITCH ROTH,
MAYOR, COUNTY OF HAWAIʻI, and WAYLEN L.K.
LEOPOLDINO, DIRECTOR OF HUMAN RESOURCES,
COUNTY OF HAWAIʻI,
Appellees-Appellees[1]

NO. CAAP-17-0000072

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO.  16-1-0106)

JUNE 30, 2022

GINOZA, CHIEF JUDGE, HIRAOKA AND NAKASONE, JJ.

OPINION OF THE COURT BY NAKASONE, J.

---

[1]    Pursuant to Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 43(c)(1), Mitch Roth, the current Mayor of the County of Hawaiʻi is substituted as an Appellee-Appellee herein in place of Harry Kim; and Waylen L.K. Leopoldino, the current Director of Human Resources, County of Hawaiʻi, is substituted as Appellee-Appellee herein in place of Sharon Toriano.

This appeal considers the application of Hawaii Revised Statutes (**HRS**) § 89C-3(b)(2),[2] which requires government employers to make adjustments to the compensation and benefit packages of civil service employees excluded from collective bargaining to ensure that the compensation and benefit packages of the excluded employees are at least equal to the compensation and benefit packages of their subordinates covered by collective bargaining. The appellants claim that the county employer violated HRS § 89C-3(b)(2) by paying appellants hourly rates less than the highest hourly rates paid to their subordinates.

Appellants-Appellants Aaron Arbles, Robert Bailey, Reuben Chun, Michael Gahan, Michael Hayashida, Garret Komatsu, Gerald Kosaki, Steve Loyola, Jerry Lum, Ty Medeiros, Paul Paiva, Raymond Rowe, Jr., Warren Sumida, and Alvin Tobosa (collectively, **Battalion Chiefs** or **Chiefs**) appeal from the (1) December 27, 2016 Decision and Order Denying Appellants' Appeal (**Decision and Order**) and (2) January 26, 2017 Final Judgment, filed and entered

---

[2]      HRS § 89C-3 (2012) states:

**§89C-3 Adjustments for excluded civil service employees.**

(a) Each jurisdiction shall provide adjustments for its respective excluded civil service employees based on recommendations from its respective personnel director.

(b) In formulating recommendations to the appropriate authority, the respective director shall:

        (1) Establish procedures that allow excluded civil service employees and employee organizations representing them to provide input on adjustments that are relevant and important to them for the director's approval;

        (2) Ensure that adjustments for excluded civil service employees result in compensation and benefit packages that are at least equal to the compensation and benefit packages provided under collective bargaining agreements for counterparts and subordinates within the employer's jurisdiction; and

        (3) Ensure that proposed adjustments are consistent with chapter 76 and equivalent or not less than adjustments provided within the employer's jurisdiction.

(Emphases added). "'Adjustment' means a change in wages, hours, benefits, or other term and condition of employment." HRS § 89C-1.5 (2012).

2

by the Circuit Court of the Third Circuit (**Circuit Court**)[3] in favor of Appellees-Appellees Mitch Roth, Mayor of the County of Hawaiʻi, and Waylen L.K. Leopoldino, Director of Human Resources, County of Hawaiʻi (collectively, **County**) and the Merit Appeals Board (**MAB**).[4]

On appeal, the Battalion Chiefs, who are excluded civil service employees, contend that the Circuit Court erred by affirming the MAB's conclusion that the County provided the Battalion Chiefs "compensation and benefit packages that [we]re at least equal to the packages of their subordinate Captains [(**Fire Captains**)] who were receiving higher hourly rates of pay because they had more years of service or were assigned to specialty stations, and therefore did not violate H.R.S § 89C-3(b)(2)." The Battalion Chiefs specifically contend that the Circuit Court and the MAB erred in excluding "Hazmat and Rescue" differentials (**hazardous assignment differential**)[5] paid to certain Fire Captains and not considering pay inversions[6] due to "years of service" in the evaluation of the respective compensation and benefit packages of the Battalion Chiefs and Fire Captains under HRS § 89C-3(b)(2). The Battalion Chiefs also contend that the Circuit Court erred when it concluded that

---

[3]     The Honorable Glenn S. Hara presided.

[4]     On appeal, the MAB filed a joinder to the County's Answering Brief.

[5]     The Battalion Chiefs refer to the differential at issue as the "Hazmat and Rescue" differential; the Circuit Court's Decision and Order refers to it as the "hazardous duty pay differential," "hazardous duty differential," and "hazardous duty premium differential." Because the 2011-2017 Collective Bargaining Agreement (**CBA**) uses the term "hazardous assignment differential," we use this terminology in this Opinion for consistency and clarity.

[6]     As used in this case, the term "pay inversion" refers to instances found by the Circuit Court in which a Battalion Chief may not have received base compensation at least equal to higher paid subordinate Fire Captains because "the Fire Captains that received higher base pay each had longer years of service" than the respective Battalion Chief. The Circuit Court determined that this situation did not violate HRS § 89C-3(b)(2).

_Arciero v. City and Cty. of Honolulu_, No. 30160, 2011 WL 6355166, at *1 (App. Dec. 15, 2011) (mem.) "did not apply."[7]

We hold that the County's exclusion of the hazardous assignment differential and failure to consider pay inversions due to "years of service" resulted in the compensation and benefit packages of the Battalion Chiefs not being "at least equal to" their subordinates' packages, in violation of HRS § 89C-3(b)(2). For the reasons explained _infra_, we vacate and remand.

## I. BACKGROUND

On August 27, 2014, the Battalion Chiefs filed a complaint with the County and then-Hawaiʻi Fire Department Fire Chief Darren J. Rosario, requesting retroactive and future adjustment of their compensation and benefit packages in compliance with HRS § 89C-3. The County denied their request, and on December 22, 2014, the Battalion Chiefs appealed the denial to the MAB. Following four days of evidentiary hearings in August and September 2015, the MAB issued its February 24, 2016 Findings of Fact, Conclusions of Law, Decision and Order Granting In Part and Denying In Part Appeal of Appellant Aaron Arbles and Denying Appeals of Robert Bailey, Reuben Chun, Michael Gahan, Michael Hayashida, Garret Komatsu, Gerald Kosaki, Steve Loyola, Jerry Lum, Ty Medeiros, Paul Paiva, Raymond Rowe, Jr., Warren Sumida, and Alvin Tobosa (**FOFs/COLs and Order**).

---

[7] In _Arciero_, this court considered whether the Honolulu Battalion Chiefs were receiving "compensation and benefit packages that [we]re at least equal to the compensation and benefit packages" of their subordinate Fire Captains, where the Chiefs were excluded from the opportunity to participate in an overtime program called "Rank for Rank," resulting in some Fire Captains being paid more than the Battalions Chiefs. HRS § 89C-3(b)(2). We upheld the circuit court's holding that this disparity -- where the adjustment provided to the Battalion Chiefs did not include the Rank for Rank benefit, and the subordinate Fire Captains' compensation and benefit package did include the Rank for Rank benefit -- violated HRS § 89C-3(b)(2). _Arciero_, 2011 WL 6355166, at *5.

_Arciero_ is an unpublished decision that is not binding but may be cited for "persuasive value." HRAP Rule 35(c)(2). In light of our resolution of the primary contentions on appeal, it is not necessary for us to address whether the Circuit Court correctly concluded that _Arciero_ did not apply.

The Battalion Chiefs appealed to the Circuit Court pursuant to HRS § 91-14.  At the November 4, 2016 hearing, the Circuit Court affirmed the MAB's FOFs/COLs and Order.  The Circuit Court filed its Decision and Order on December 27, 2016.  The Battalion Chiefs timely appealed the January 26, 2017 Final Judgment.

The Decision and Order sets forth the relevant procedural history, factual findings,[8] and legal conclusions as follows:

> The Hawaiʻi Fire Department divides Hawaiʻi Island into two operational Battalions.  The First Battalion covers the east side of the island and the Second Battalion the west.  There are eleven stations in the First Battalion. Nine are commanded by Fire Captains and two by Fire Equipment Operators.  The Second Battalion has nine stations.[9]
>
> Within each battalion, there are also two specialty fire stations.  One provides rescue operations such as water, high angle, and helicopter rescue.  The other provides hazardous materials ("HAZMAT") operations.  Firefighters assigned to these stations need to complete specialized training.
>
> Firefighter IIIs and Captains assigned to specialty units (rescue or HAZMAT) are entitled to an hourly rate increase of 8.126% above their rank and longevity rate. This differential is paid for all hours worked regardless of whether the firefighter actually participates in a rescue or HAZMAT activity.
>
> The Hawaiʻi Fire Fighters Association ("HFFA") is the union representing firefighters working for the counties in the State of Hawaiʻi.  The HFFA negotiates with the Counties to reach a Collective Bargaining Agreement ("CBA") that applies uniformly for all members of HFF A across the State of Hawaiʻi.  Thus, HFFA members have the same compensation and benefit packages under the CBA regardless of whether they work for the County of Hawaiʻi or the City and County of Honolulu.  The HFFA is designated as Bargaining Unit 11.  Firefighter IIIs and Captains assigned to specialty units

---

[8]    Unchallenged findings are binding on appeal.  See State v. Rodrigues, 145 Hawaiʻi 487, 497, 454 P.3d 428, 438 (2019).

[9]    Additional background from the MAB's FOFs pertinent to the role of the Battalion Chiefs, which was not included in the Decision and Order, is set forth as follows:  each Battalion Chief in the First and Second Battalions commands more than nine Captains and more than fifty total firefighters while on duty, MAB FOF 62; because firefighters work 24-hour shifts, "[t]hree Battalion Chiefs are assigned to each Battalion and work in consecutive shifts to provide continuous command over each Battalion at all times[,]" MAB FOF 63; and there are a total of six operational Battalion Chiefs, id.

(rescue or HAZMAT) are members of Unit 11 and represented by the HFFA.

The CBA for Bargaining Unit 11 for 2011-2017 provides for the 8.126% differential. Section 44D of the CBA states, in part, that employees assigned to units that are designated for search and rescue which require them to be trained and/or certified beyond that which is required for other members of their class (and such is not recognized in the pricing of their class) shall be paid a hazardous assignment differential of 8.126% of the employee's regular salary in addition to base pay and applicable differentials and premiums. The 8.126% differential is only paid to specially trained and qualified personnel assigned to specialty fire stations and not to all members of Bargaining Unit 11, unlike Rank for Rank, which was the focus of the Arciero case.

Battalion Chiefs are excluded managerial positions. They are not members of Bargaining Unit 11. During the period [sic] January 1, 2005 to January 15, 2015, no Battalion Chief has ever been assigned to any of the Hawaiʻi County Fire Department's two HAZMAT and two Rescue stations.[10]

---

[10] The Battalion Chiefs are not "assigned" to the specialty stations or any other station, because they are assigned to battalions, and each battalion includes two specialty stations. See Decision and Order; MAB FOFs 62, 63. The record before the MAB reflects that Battalion Chiefs are required to have the specialized HAZMAT training to oversee the specialty stations and to serve as Battalion Chiefs:

> Q. [(BY COUNSEL FOR BATTALION CHIEFS)] Okay. Now with respect to [[CBA Section 44]] D, you see where D says, notwithstanding the above, employees assigned to units that are designated for search and rescue responses, which require them to be trained or certified, beyond that which is required of other members of their class, shall be paid a hazardous assignment differential of 8.126 percent of the employee's regular salary. Do you see that?
>
> A. [(BY BATTALION CHIEF MICHAEL HAYASHIDA)] Yes.
>
> Q. Now, do they have to actually jump in the water to get the 8.126 percent?
>
> A. No. They just have to be on duty at the station, so as long as they report for duty at 0800 hundred hours, they automatically get the pay.
>
> Q. But they also have to be trained or certified, is that right?
>
> A. Yes.
>
> Q. And do BCs [(Battalion Chiefs)] have to be trained or certified?
>
> A. Yes.

(continued...)

Appellants' claim they did not receive compensation and benefit packages since 2005 that are at least equal to the compensation and benefit packages provided under applicable collective bargaining agreements for counterparts and subordinates was primarily based on the report and testimony of their expert, a certified public accountant. The expert's report was admitted into evidence during the hearings on the merits.

The expert identified the highest hourly rates for Fire Captains in Hawaiʻi County over the time period covered in the County's payroll records. He compared the highest Captain's hourly rate to each Battalion Chiefs actual hourly rate for the same pay periods. The conclusions in the expert's report were based on his premise the 8.126 % [sic] hazardous duty pay differential was an "adjustment".

Appellants' expert did not identify any instances in which a Battalion Chief did not receive compensation and benefit packages at least equal to that of subordinate Fire Captains that did not arise from the assumption that the 8.126 % [sic] hazardous duty differential was an adjustment.

As mentioned above, the 8.126% hazardous duty assignment is only paid to specially trained and qualified personnel assigned to specialty fire stations and not to all members of Bargaining Unit 11. Excluding consideration of the hazardous duty premium differential available only to bargaining unit employees assigned to specialty HAZMAT and Rescue Stations, none of the Appellants identified any specific instance in which any Appellant did not receive compensation and benefit packages at least equal to that of any subordinate Fire Captain.

**The hazardous duty premium differential identified in § 44 D. of the CBA is not available to employees who are not specially trained and not assigned to specialty HAZMAT and Rescue stations. It does not comprise an "adjustment" to compensation nor is it part of a benefit package for purposes of ensuring that excluded civil service employees receive compensation and benefit packages that are at least equal to the compensation and benefit packages provided under collective bargaining agreements for counterparts and**

---

[10](...continued)

Q.   And the training or certification that BCs are required to have is what?

A.   HAZMAT.

Q.   And that's part of your requirement to oversee these divisions, is that correct?

A.   Yes.

(Emphases added). Thus, the Chiefs possess the same HAZMAT and rescue training required for the specialty stations that they are required to oversee, but they do not receive the hazardous assignment differential under the CBA because they are excluded employees.

**subordinates within the employer's jurisdiction**.[11]  The CBA, at Section 32-A entitled COMPENSATION ADJUSTMENTS, defines "basic rate of pay" as "the rate of pay assigned to the salary range and step an employee is receiving as compensation."  The definition does not include "differentials".

Moreover, Section 32-A, Paragraph I., sub-paragraphs 1 and 2 of the CBA, state that Temporary Differential and Permanent Differential pay shall not be considered part of an Employee's basic rate of pay. (Emphasis added).

In addition to the above, from July 2007 to June 2015, the Battalion Chiefs in the County of Hawaiʻi Fire Department were paid a base salary at least equal to Fire Captains.

**V.    Instances of Pay Inversion**

During the [August 26-27, 2015 and September 24-25, 2015] evidentiary hearings [before the MAB],[12] the Employer identified limited instances in which a Battalion Chief may not have received base compensation at least equal to a subordinate fire captain.  The Employer determined that, in addition to the highest and lowest compensation, there were intermediate steps as well as inversions.  The Employer identified inversions for three of the Appellants, namely, Battalion Chiefs Arbles, Gahan and Lum.

The inversions in pay identified by the County for Appellant Arbles for years 2007, 2008, and 2009 violate Hawaiʻi Revised Statutes § 89C-3(b)(2) because the highest paid non-specialty Fire Captain with equal or lesser years of service than Appellant Arbles received higher base pay than Appellant Arbles.  HRS § 89C-3(b)(2).  As a result of Appellant Arbles' promotion early in his career, there was a period of three years in which he did not receive compensation at least equal to that of the highest paid fire captain.

---

[11]    This bolded portion of the Decision and Order is a near verbatim recitation of MAB COL 8, which stated:

8.    The hazardous pay differential identified in § 44 D. of the operative collective bargaining agreements is not available to employees who are not specially trained and not assigned to specialty HAZMAT and Rescue stations and does not comprise an "adjustment" nor part of a benefit package for purposes of ensuring that excluded civil service employees receive compensation and benefit packages that are at least equal to the compensation and benefit packages provided under collective bargaining agreements for counterparts and subordinates within the employer's jurisdiction.

The Chiefs specifically argue that COL 8 was wrong, and the Circuit Court erred in affirming it.

[12]    In its Decision and Order, the Circuit Court erroneously dated the hearings as "August 26-27, 2016 and September 24-25, 2016."

**The inversions in pay identified by the County for Appellants Gahan and Lum did not violate HRS § 89C-3(b)(2) because the Fire Captains that received higher base pay each had longer years of service than Appellants Gahan and Lum.**[13] Hawaiʻi Revised Statutes § 76-1 et seq.; § 89C-3(b)(2). The inversions in which Appellants Gahan and Lum may not have received base compensation at least equal to the most highly paid subordinate fire captain resulted from their respective promotions to Battalion Chief in the early stages of their career in the fire department.

**VI.** **Seniority and the Merit Principle.**

The Court has reviewed the wording of HRS § 89C-3(b)(2), the statute relied upon by the Appellants. However, the Court finds that is not the only statute relevant to this case. The Court finds HRS Chapter 89C, Public Officers and Employees Excluded from Collective Bargaining, must be read as a whole. In addition, the language of the applicable collective bargaining agreement and the merit principle, HRS §76-1, must also be taken into account.

HRS § 89C-2(3) allows an Employer to make adjustments for excluded employees subject to the guideline and limitation that any adjustment made for excluded civil service employees <u>shall be consistent with the merit principle and shall not diminish any rights provided under Chapter 76, Civil Service Law</u>, Hawaiʻi Revised Statutes. (Emphasis added).

HRS § 89C-3(b)(2) requires that the Employer ensure that adjustments for excluded civil service employees result in compensation and benefit packages that are at least equal to the compensation and benefit packages <u>provided under collective bargaining agreements</u> for <u>counterparts and subordinates within the employer's jurisdiction</u>. Hawaiʻi Revised Statutes § 89C-3(b)(2). (Emphasis added).

Hawaiʻi Revised Statutes § 89C-3(b)(3) requires that the Employer ensure that <u>proposed adjustments are consistent with chapter 76</u> and equivalent or not less than adjustments provided within the employer's jurisdiction. Hawaiʻi Revised Statutes § 89C-3(b)(3). (Emphasis added).

The Hawaiʻi Firefighters CBA provides for the payment of differentials. The differentials are not to be

---

[13] This bolded portion of the Circuit Court's Decision and Order is substantially similar to MAB COL 15, which stated:

15. The inversions in pay identified by the County for Appellants Gahan and Lum in its Exhibit "WWW" did not violate Hawaii Revised Statutes § 89C-3(b)(2) because the Fire Captains that received higher base pay eaeh [sic] had longer years of service than Appellants Gahan and Lum. Hawaii Revised Statutes § 76-1 et seq.; § 89C-3(b)(2).

The Chiefs specifically argue that COL 15 was wrong, and the Circuit Court erred in affirming it.

considered to be part of basic pay.  Exclusion of differentials, such as the one for 8.126% for hazardous duty pay, in the comparison of the compensation packages between Fire Captains and Battalion Chiefs by the Merit Appeals Board was not in error.

The Merit Appeals Board could consider matters of service and longevity in deciding whether the Employer was in compliance with HRS §89C-3(b)(2).  Service and longevity are factors in the general structure of public worker pay scales.  Pay schedule and the longevity steps based on years of service and the various step increases are matters that are properly considered in determining whether a compensation package is at least equal to a subordinate's pay within the employer's jurisdiction as provided by statute.  This principle is embodied in the CBA.

The Board concludes Hawaiʻi Revised Statutes § 89C-3(b)(2) is properly understood and to be interpreted consistent with the merit principle codified in Chapter 76, Hawaiʻi Revised Statutes, which merit principle allows for differences in pay among counterparts and subordinates consistent with years of service. HRS §§ 76-1 et seq.; 89C-3(b)(2).

The facts and evidence show the Appellants, with the exceptions noted above, were paid compensation and benefit packages at least equal to the subordinates immediately below them.

Lastly, there is no language in the legislative history indicating that one of the purposes of HRS § 89C-3(b)(2) was to bestow upon battalion chiefs a benefit that was not given across-the-board to all bargaining unit members.

(Bolding and footnotes added).

## II. STANDARDS OF REVIEW

### A.   Secondary Appeal

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal.  The standard of review is one in which [the appellate] court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (1993) to the agency's decision.

HRS § 91-14, entitled "Judicial review of contested cases," provides in relevant part:

(g)   Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

> (1)    In violation of constitutional or statutory provisions; or
>
> (2)    In excess of the statutory authority or jurisdiction of the agency; or
>
> (3)    Made upon unlawful procedure; or
>
> (4)    Affected by other error of law; or
>
> (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).

United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Hanneman, 106 Hawaiʻi 359, 363, 105 P.3d 236, 240 (2005) (brackets omitted) (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004)). "Pursuant to HRS § 91-14(g), an agency's conclusions of law are reviewed de novo." Id. (internal quotation marks and citation omitted). "A circuit court's conclusions of law are subject to *de novo* review." Paul's Elec. Serv., 104 Hawaiʻi at 420, 91 P.3d at 502 (citation omitted).

### B.    Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo." JD v. PD, 149 Hawaiʻi 92, 96, 482 P.3d 555, 559 (App. 2021) (citation omitted). In construing statutes, we observe the following principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness

11

or uncertainty of an expression used in a statute, an ambiguity exists.

Id. (citation omitted).

## III. DISCUSSION

**A.**  **The Circuit Court erred when it affirmed the MAB's exclusion of the hazardous assignment differential in comparing the respective compensation and benefit packages under HRS § 89C-3(b)(2).**

The Battalion Chiefs contend that the Circuit Court erred in affirming the MAB's COL 8 that HRS § 89C-3(b)(2) was not violated where the Chiefs' compensation and benefit packages were not at least equal to the packages of their subordinate Captains "who were receiving higher hourly rates of pay" because they were "assigned to specialty stations[.]"  COL 8 stated in pertinent part that because the hazardous assignment differential in CBA Section 44D[14] "is not available to employees who are not specially trained and not assigned to specialty HAZMAT and Rescue stations," it "does not comprise an 'adjustment'" and is not "part of a benefit package for purposes of ensuring" that the Battalion Chiefs' compensation and benefit packages were at least equal to the compensation and benefit packages provided under the CBA to the Fire Captains.

---

[14]  CBA Section 44, entitled "Hazardous Duty," provides in subsection D that:

> D.  Notwithstanding the above, <u>Employees assigned to units that are designated for search and rescue responses which require them to be *trained and/or certified* beyond that which is required for other members of their class</u> (and such is not recognized in the pricing of their class), <u>shall be paid a hazardous assignment differential of 8.126%</u> of the Employee's regular salary in addition to base pay and applicable differentials and premiums.  The minimum compensable period shall be one shift.  It is provided that such hazardous assignment differential shall be in lieu of the above provisions except as provided in subsection B.1.c. relating to HAZMAT.

(Emphases added).

Relying on the CBA, the County argues that the hazardous assignment differential "falls outside the scope of HRS § 89C-3" because the statute "does not apply to differentials," which are "factors applied after-the-fact to wages that are 'not considered part of an employee's basic rate of pay'" under CBA Section 32-A(I)(1)(b).[15]  The MAB agreed with the County, concluding in COL 8 that the hazardous assignment differential "does not comprise an 'adjustment' nor part of a benefit package" for purposes of ensuring that the respective compensation and benefit packages were at least equal under HRS § 89C-3(b)(2).  This conclusion was erroneous.

Regardless of how the hazardous assignment differential is characterized under the CBA, *i.e.*, not part of an employee's "basic rate of pay," the hazardous assignment differential is clearly part of the Fire Captains' "compensation and benefit packages" for purposes of HRS § 89C-3(b)(2).  The hazardous assignment differential, as described in the Decision and Order, is an amount "8.126% of the employee's regular salary" that is "paid" to certain qualifying employees, and is clearly a type of compensation.  From a plain reading of the statute, there are no exceptions for specialty assignments or hazardous assignment differentials in HRS § 89C-3(b)(2).  See JD, 149 Hawaiʻi at 96, 482 P.3d at 559.

The CBA is a contract between the union representing covered employees and the County, and is reviewed *de novo*, similar to how we interpret statutes.  See Casumpang v. ILWU, Local 142, 94 Hawaiʻi 330, 343, 13 P.3d 1235, 1248 (2000) (citation and formatting omitted) ("Collective-bargaining agreements are the principal form of contract between an employer and a labor organization."); Koga Eng'g & Constr., Inc. v. State

---

[15]     CBA Section 32-A(I)(1)(b) provides:  "The TD [(Temporary Differential)] pay shall not be considered part of an Employee's basic rate of pay."  The Decision and Order concluded, citing Section 32-A(I), that: "Temporary Differential and Permanent Differential pay shall not be considered part of an Employee's basic rate of pay."

of Hawaiʻi, 122 Hawaiʻi 60, 72, 222 P.3d 979, 991 (2010) (stating that the construction of a contract is a question of law, and "absent an ambiguity, the contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech.") (citation and brackets omitted)).

A plain reading of the CBA, in general and specifically in Section 44D, indicates that the hazardous assignment differential is part of the Fire Captains' "compensation." Section 44D states that the employee "shall be <u>paid</u>" the differential if the qualifying conditions are met. CBA Section 44D (emphasis added). It also sets a "minimum <u>compensable</u> period" for the hazardous assignment differential. <u>Id.</u> (emphasis added). Both the Circuit Court's Decision and Order and the County rely on the CBA language in Section 32-A that defines "basic rate of pay" to exclude differentials, and thus support the exclusion of the hazardous assignment differential from the "compensation and benefit packages" of the Fire Captains.[16] The exclusion of differentials under a CBA definition, however, does not mean that the hazardous assignment differential in this case is not part of a "compensation and benefit" package under HRS § 89C-3(b)(2). Furthermore, Section 32-A, upon which the County and the Circuit Court relied, is entitled "Compensation Adjustments," which is a subsection under the section entitled "Wages." Under the CBA's own categorization, differentials are clearly classified as a type of compensation, for which eligible employees are entitled to "pay adjustments" under the

---

[16] The Circuit Court noted that Section 32-A defined "basic rate of pay" to exclude differentials. CBA Section 32-A(A)(2) pertinently provides:

2. For purposes of this section, "basic rate of pay" means the rate of pay assigned to the salary range and step an Employee is receiving as compensation. For an Employee whose position is not assigned to the salary range, "basic rate of pay" shall mean the actual rate of compensation the Employee is receiving as remuneration for services performed in a particular position, <u>not including any differentials</u>.

(Emphasis added).

"Compensation Adjustments" Section 32-A. See CBA Section 32-A(A)(5)[17] (providing a formula for computing pay adjustments for employees working less than a normal month, consisting of a "monthly basic rate of pay" plus various categories of differentials). Thus, the language and structure of the CBA, treating differentials as a type of compensation adjustment, support our conclusion that the hazardous assignment differential is part of the Fire Captains' compensation, and is encompassed within the Captains' "compensation and benefit **packages**" under HRS § 89C-3(b)(2). (Emphasis added). The Circuit Court and the MAB erred in concluding that the hazardous assignment differential was not a part of the Fire Captains' compensation and benefit packages for purposes of assessing whether the compensation and benefit packages of the Battalion Chiefs were at least equal thereto under HRS § 89C-3(b)(2). See United Pub. Workers, 106 Hawaiʻi at 363, 105 P.3d at 240.

> **B.    The Circuit Court erred when it affirmed the MAB's failure to consider pay inversions due to "years of service" when comparing the respective compensation and benefit packages of the Battalion Chiefs and their subordinates under HRS § 89C-3(b)(2).**

The Battalion Chiefs contend that the Circuit Court and the MAB erred in concluding that HRS § 89C-3(b)(2) was not violated because the higher hourly rates of pay that some subordinate Fire Captains received were due to those Captains having more years of service than some Battalion Chiefs. The Battalion Chiefs assert that there is no "years of service"

---

[17]    CBA Section 32-A(A)(5) provides,

Pay adjustments for Employees who work less than a normal month shall be computed pursuant to the following formula: Employee's monthly basic rate of pay (as shown on the appropriate salary schedule) plus Permanent Differential (PD), Temporary Differential (TD), Conversion Differential (CD), or Temporary Compression Differential (TCD), as applicable multiplied by (number of days worked divided by number of working days in a month, including holidays).

exception to the requirements of HRS § 89C-3(b)(2); and that the subsection (b) requirement that adjustments be "consistent" with the HRS § 76-1 merit principle does not mean that "years of service" can justify Fire Captains being compensated more than Battalion Chiefs. The Chiefs point out that the merit principle in HRS § 76-1 does not mention "'years of service' or any similar concept," and argue that the Circuit Court erroneously affirmed the MAB's COL 15. We also address COL 16, which contains the MAB's interpretation of the pertinent statutes relevant to COL 15. COLs 15 and 16[18] state:

> 15. The inversions in pay identified by the County for Appellants Gahan and Lum in its Exhibit "WWW" did not violate Hawaii Revised Statutes § 89C-3(b)(2) because the Fire Captains that received higher base pay eaeh [sic] had longer years of service than Appellants Gahan and Lum. Hawaii Revised Statutes § 76-1 et seq.; § 89C-3(b)(2).

> 16. The Board concludes Hawaii Revised Statutes § 89C-3(b)(2) is properly understood and interpreted consistent with the merit principle codified in Chapter 76, Hawaii Revised Statutes, which merit principle allows for differences in pay among counterparts and subordinates eonsistent [sic] with years of service. Hawaii Revised Statutes §§ 76-1 et seq.; 89C-3(b)(2).

The issue presented here is, as to the excluded Battalion Chiefs under HRS Chapter 89C, when interpreting the parity requirement of HRS § 89C-3(b)(2) consistent with the merit principle, whether increased pay for subordinate employees' "years of service" must be considered as part of the subordinates' "compensation and benefit" package. We conclude that it must.

---

[18] These COLs were adopted and incorporated into the Circuit Court's Decision and Order, as stated <u>supra</u>.

Under HRS § 76-1,[19] the merit principle is "the

_____

[19] HRS § 76-1 (2012) provides:

**§76-1. Purposes; merit principle.**

It is the purpose of this chapter to require each jurisdiction to establish and maintain a separately administered civil service system based on the merit principle. The merit principle is the selection of persons based on their fitness and ability for public employment and the retention of employees based on their demonstrated appropriate conduct and productive performance. It is also the purpose of this chapter to build a career service in government, free from coercive political influences, to render impartial service to the public at all times, according to the dictates of ethics and morality and in compliance with all laws.

In order to achieve these purposes, it is the declared policy of the State that the human resource program within each jurisdiction be administered in accordance with the following:

    (1)   Equal opportunity for all in compliance with all laws prohibiting discrimination. No person shall be discriminated against in examination, appointment, reinstatement, reemployment, promotion, transfer, demotion, or removal, with respect to any position when the work may be efficiently performed by the person without hazard or danger to the health and safety of the person or others;

    (2)   Impartial selection of individuals for public service by means of competitive tests which are fair, objective, and practical;

    (3)   Incentives for competent employees within the service, whether financial or promotional opportunities and other performance based group and individual awards that encourage continuous improvement to achieve superior performance;

    (4)   Reasonable job security for competent employees and discharge of unnecessary or inefficient employees with the right to grieve and appeal personnel actions through the:

      (A) Contractual grievance procedure for employees covered by chapter 89; or

      (B) Internal complaint procedures and the merit appeals board for employees excluded from coverage under chapter 89;

    (5)   Equal pay for equal work shall apply between classes in the same bargaining unit among jurisdictions for those classes determined to be
(continued...)

selection of persons based on their fitness and ability for public employment and the retention of employees based on their demonstrated appropriate conduct and productive performance." HRS § 76-1 lists various policy directives in subsections (1) through (6) to achieve the purposes of Chapter 76, including the merit principle (**merit principle policies**). These merit principle policies include equal opportunity and non-discrimination under subsection (1); impartial selection through competitive tests under subsection (2); financial or promotional incentives for competent employees under subsection (3); reasonable job security for competent employees and discharge of unnecessary or inefficient employees through contractual grievance procedures for Chapter 89 employees or by internal complaint and the MAB for employees excluded from Chapter 89, under subsection (4); equal pay for equal work between classes in the same bargaining unit under subsection (5); and harmonious and cooperative relations between government and its employees under subsection (6). See HRS § 76-1.

"Years of service," referenced in COL 16, is apparently a term related to the CBA calculating a covered employee's "step movement" or increase in basic rate of pay to the next higher step within a pay range.[20] COL 16 appears to express part of the

---

[19](...continued)

> equal through systematic classification of positions based on objective criteria and adequate job evaluation, unless it has been agreed in accordance with chapter 89 to negotiate the repricing of classes; and

> (6) Harmonious and cooperative relations between government and its employees, including employee organizations representing them, to develop and maintain a well-trained, efficient, and productive work force that utilizes advanced technology to ensure effective government operations and delivery of public services.

(Emphases added).

[20] CBA Section 32-A(O), entitled "Step Movement," provides:

(continued...)

merit principle policy in subsection (5) of HRS § 76-1, which states:

> (5)  Equal pay for equal work shall apply between classes in the same bargaining unit among jurisdictions for those classes determined to be equal through systematic classification of positions based on objective criteria and adequate job evaluation, unless it has been agreed in accordance with chapter 89 to negotiate the repricing of classes[.]

This merit principle policy does not apply to excluded employees like the Battalion Chiefs, who are not in a "bargaining unit."

---

[20](...continued)
> 1.  Definitions - The following definitions shall be applicable to this subsection:
>
>      a.  "Step movement" means an increase of an Employee's basic rate of pay to the next higher step within the pay range which may be granted as provided in Section 32. Wages.
>
>      b.  "Service anniversary date" means the date the Employee is granted a step movement, which shall be the anniversary of the Employee's last date of hire (adjusted for periods of time not creditable as provided in subsection (3.) below).
>
>      c.  <u>"Service" means employment service for the Employer in an existing or previously existing class or position</u> which is or has been included in or excluded from the bargaining unit for which the Union is certified as the exclusive bargaining representative under the provisions of the Hawaii Collective Bargaining in Public Employment Law.  Service shall include service in all Employer jurisdictions.
>
> 2.  Eligibility for Step Movement - Any Employee at a step or rate below the maximum step of the pay range shall be eligible for and shall receive a step movement on the Employee's service anniversary date, provided the Employee has completed the cumulative years of service corresponding to the next higher step as specified in the following:
>
>      . . . .
>
>      [(sets forth the cumulative years of service range for each step)].

(Emphasis added).

This case concerns HRS Chapter 89C excluded employees not covered by a CBA, for whom any HRS § 89C-3(b)(2) parity adjustment made must be "consistent" with the HRS § 76-1 merit principle. HRS § 89C-2 (2012), entitled "Adjustments authorized; limitations, restrictions," provides that: "(3) Any adjustment made for excluded civil service employees <u>shall be consistent with the merit principle</u> and shall not diminish any rights provided under chapter 76 . . . ." (Emphasis added). HRS § 89C-3(b)(3) also requires that the employer "[e]nsure that proposed adjustments are consistent with chapter 76 . . . ."

We have closely examined the merit principle policies under HRS § 76-1, and the merit principle policy that is most applicable to the circumstances of this case under HRS § 89C-3(b)(2) is HRS § 76-1(3), which states: "[i]ncentives for competent employees within the service, whether financial or promotional opportunities and other performance based group and individual awards that encourage continuous improvement to achieve superior performance . . . ." Thus, it would be contrary to merit principle policies for a fire captain who is promoted to battalion chief to be paid less than a fire captain with more years of service. Such a practice would be a financial disincentive for qualified fire personnel to seek to be promoted to battalion chief.

HRS §§ 89C-2(3) and 89C-3(b)(3) simply state that the adjustments must be "consistent" with the "merit principle" or "Chapter 76." Fulfillment of the merit principle expressed in HRS § 76-1(3) includes providing incentives to "competent employees," such as "financial or promotional opportunities" to "encourage continuous improvement" by these competent employees. Conducting an HRS § 89C-3(b)(2) comparison that allows for differences in pay based on years of service, where subordinate Fire Captains end up with higher compensation than their superior Battalion Chiefs as described in COL 15, provides a financial disincentive for Fire Captains to pursue promotional

opportunities to become Battalion Chiefs.  See HRS § 76-1(3).
Such an anomalous result does not encourage employees to seek
continuous improvement over the course of their government
careers and is contrary to the merit principle.  See id.

At oral argument,[21] the County asserted that it would
not be able to fairly re-price compensation for Battalion Chiefs
every time a Fire Captain with many years of service retires.
HRS § 89C-3 does not require such immediate re-pricing.  As
asserted by the Battalion Chiefs, HRS § 89C-3(b)(1) provides that
the respective personnel director of a jurisdiction "[e]stablish
procedures that allow excluded civil service employees and
employee organizations representing them to provide input on
adjustments that are relevant and important to them for the
director's approval[.]"  The County can properly address re-
pricing due to "years of service" under HRS § 89C-3 by
establishing procedures as set out in subsection (b)(1).

Thus, it was error for the Circuit Court and the MAB,
in COL 16, to fail to consider pay inversions caused by "years of
service" calculations when evaluating the respective compensation
and benefit packages of the Battalion Chiefs and subordinate Fire
Captains for required adjustments under HRS § 89C-3(b)(2)
consistent with the merit principle.  See United Pub. Workers,
106 Hawaiʻi at 363, 105 P.3d at 240.  The pay inversion described
in COL 15 violated HRS § 89C-3(b)(2) to the extent the
compensation package of a battalion chief was less than that of a
subordinate fire captain with more years of service, and was
inconsistent with the merit principle under HRS § 76-1(3).  See
id.

C.    The legislative history supports the result
      reached in this case.

The plain language of HRS § 89C-3(b)(2) requires a
government jurisdiction to make adjustments to ensure that
excluded civil service employees' compensation and benefit

_____

[21]    Oral argument was held in this case on June 1, 2022.

packages are "at least equal to" the packages of their subordinates under collective bargaining agreements. The language of the statute does not contain any exceptions for specialty assignments, exclusion of differentials, or pay inversions due to "years of service." The legislative history supports the analysis and result reached in this case.

"[T]he plain language rule of statutory construction does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review." Sato v. Tawata, 79 Hawaiʻi 14, 17, 897 P.2d 941, 944 (1995) (citations and punctuation omitted). We may examine "sources other than the language of the statute itself" to "discern the underlying policy which the legislature seeks to promulgate . . . to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute." State v. Demello, 136 Hawaiʻi 193, 197, 361 P.3d 420, 424 (2015) (citation and internal quotation marks omitted).

In 2005, the Legislature amended HRS § 89C-3 to include the language "at least equal to," requiring that employers ensure that adjustments for excluded civil service employees result in compensation and benefit packages that are at least equal to their counterparts and subordinates under CBAs. 2005 Haw. Sess. Laws Act 2, § 1 at 788.[22] The Legislature recognized that there was a "disparity in compensation and benefits" between excluded

---

[22] Act 2 amended subsection (b)(2) as follows:

> (2)  Ensure that adjustments for excluded civil service employees result in compensation and benefit packages that are [appropriate for what they do and the contribution they make in consideration of] at least equal to the compensation and benefit packages provided under collective bargaining agreements for counterparts and subordinates within the employer's jurisdiction; and
>
> . . . .

2005 Haw. Sess. Laws Act 2, § 1 at 788.

civil service employees and their counterparts and subordinates covered by CBAs. S. Stand. Comm. Rep. No. 1857, in 2005 Senate Journal, at 1901. The bill was introduced "in the interest of fairness and equity" because while the prior version of HRS § 89C-3 seemed "equitable on its face," the current bill "level[ed] the playing field by requiring excluded employees to be compensated at a level that is at least equal to the compensation and benefit packages provided under collective bargaining agreements for their counterparts and subordinates." S. Stand. Comm. Rep. No. 1177, in 2005 Senate Journal, at 1588; S. Stand. Comm. Rep. No. 1857, in 2005 Senate Journal, at 1901. The Legislature recognized that excluded civil service employees "should not be treated less favorably than their counterparts who are covered by collective bargaining agreements" and emphasized that the purpose of having equivalent compensation and benefit adjustments for excluded civil service employees was to maintain fairness and increase morale. H. Stand. Comm. Rep. No. 106, in 2005 House Journal, at 1088; S. Stand. Comm. Rep. No. 1177, in 2005 Senate Journal, at 1588. Thus, it was "necessary to adequately compensate these excluded employees at a level which is at least equal to their counterparts who are covered by collective bargaining." S. Stand. Comm. Rep. No. 1177, in 2005 Senate Journal, at 1588.

The legislative history confirms that the Legislature intended to eliminate any unfairness and "disparity in compensation and benefits" for excluded civil service employees under HRS § 89C-3. S. Stand. Comm. Rep. No. 1857, in 2005 Senate Journal, at 1901; see Demello, 136 Hawaiʻi at 197, 361 P.3d at 424. The Legislature viewed an employer's adjustment to the compensation and benefit packages for excluded civil service employees as necessary to ensure equitable compensation and increase morale under HRS § 89C-3. See S. Stand. Comm. Rep. No. 1177, in 2005 Senate Journal, at 1588. Both a plain reading of

HRS § 89C-3 and the legislative history support the result reached in this case.

### IV. CONCLUSION

For the foregoing reasons, we vacate the (1) December 27, 2016 Decision and Order Denying Appellants' Appeal and (2) January 26, 2017 Final Judgment, filed and entered by the Circuit Court of the Third Circuit, and remand to the Circuit Court with instructions to remand to the Merit Appeals Board for proceedings in accordance with this Opinion.

On the briefs:

Robert M. Hatch,
Margery S. Bronster,
(Bronster Fujichaku Robbins
A Law Corporation)
for Appellants-Appellants.

D. Kaena Horowitz,
Mark D. Disher,
Deputies Corporation Counsel,
County of Hawaiʻi,
for Appellees-Appellees
Mitch Roth, Mayor of County of
Hawaiʻi and Waylen L.K.
Leopoldino, Director of Human
Resources, County of Hawaiʻi.

James E. Halvorson,
Deputy Attorney General,
for Appellee-Appellee
Merit Appeals Board.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge