**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000375**
**15-FEB-2024**
**08:07 AM**
**Dkt. 89 SO**

NO. CAAP-17-0000375

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAII ORGANIZATION OF POLICE OFFICERS (SHOPO),
Complainant-Appellant-Appellant, v. HAWAIʻI LABOR
RELATIONS BOARD; MARCUS R. OSHIRO; SESNITA A.D. MOEPONO;
and STACY MONIZ,[1], Agency-Appellees-Appellees, and
DEREK S.K. KAWAKAMI,[2] Mayor of the County of Kauaʻi, State of
Hawaiʻi; TODD G. RAYBUCK,[3] Chief of Police of the Kauaʻi Police
Department; COUNTY OF KAUAʻI, a political subdivision of the
State of Hawaiʻi, Respondents-Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC161001259)

**SUMMARY DISPOSITION ORDER**
(By: Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ.)

The State of Hawaii Organization of Police Officers
(**SHOPO**) appeals from the Final Judgment in favor of the Chief of
the Kauaʻi Police Department and the Mayor of the County of Kauaʻi
(collectively, **KPD**) and the Hawaiʻi Labor Relations Board and its

---

[1]     Under Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 43(c), a
public officer named in a case is automatically substituted by the officer's
successor when the holder of the office ceases to hold office on appeal.
Accordingly, Hawaiʻi Labor Relations Board (**HLRB**) labor member Stacy Moniz has
been substituted for former HLRB member Rock B. Ley.

[2]     Under HRAP Rule 43(c), Mayor Derek S.K. Kawakami has been
substituted for former Mayor Bernard P. Carvalho, Jr.

[3]     Under HRAP Rule 43(c), Chief of Police Todd G. Raybuck has been
substituted for former Chief of Police of the Kauaʻi Police Department
Darryl D. Perry.

members (collectively, **HLRB**) entered by the Circuit Court of the First Circuit on April 25, 2017.[4]  We affirm.

KPD consulted with SHOPO on creating a policy for a body-worn camera system (**BWCS**) for use by Kauaʻi police officers.  Consensus was reached.  SHOPO asked KPD to sign an agreement stating that mutual consent was required before the policy could be implemented.  KPD refused to sign.  KPD issued General Order 41.17 "Body-Worn Camera System (BWCS)" (**GO-41.17**) on December 11, 2015.

On January 11, 2016, SHOPO filed a complaint against KPD with HLRB.  It claimed that KPD violated its collective bargaining agreement (**CBA**) and Hawaii Revised Statutes (**HRS**) Chapter 89.  HLRB ruled that KPD did not have to obtain SHOPO's consent to GO-41.17.  Its Decision and Order was entered on June 3, 2016.  SHOPO appealed to the circuit court.  The circuit court affirmed and entered the Final Judgment.  SHOPO filed this secondary appeal.

We must decide whether the circuit court was right or wrong by applying the standards in HRS § 91-14(g) to HLRB's Decision and Order, based on the record before HLRB.  Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018).  SHOPO contends that HLRB misapplied the CBA and HRS § 89-9(d) or, if HLRB correctly applied HRS § 89-9(d), the statute is unconstitutional because it infringes on SHOPO's right to collectively bargain wages, hours, and working conditions.

**HLRB did not misapply the CBA.**  The CBA is a contract. Arbles v. Merit Appeals Bd., 151 Hawaiʻi 400, 409, 515 P.3d 217, 226 (App. 2022).  "The construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court."  Provident Funding Assocs., L.P. v. Gardner, 149 Hawaiʻi 288, 296, 488 P.3d 1267, 1275 (2021) (citations omitted). "Contract terms are interpreted according to their plain,

---

4        The Honorable Rhonda A. Nishimura presided.

ordinary, and accepted sense in common speech."  Id. at 298, 488
P.3d at 1277 (citation omitted).

The dispositive CBA terms are in Articles 1, 14,
and 17.  Article 1 provides:

> **C.  Consultation** — The Employer agrees that it shall consult
> [SHOPO] prior to the final formulation and implementation of
> personnel policies and practices affecting employee
> relations on wages, hours or conditions of employment.
>
> **D.  Mutual Consent** — No changes in wages, hours or other
> conditions of work contained herein may be made except by
> mutual consent.

Article 14 provides, in relevant part:

> The Employer agrees to furnish [SHOPO] and the respective
> chapter chairperson with a written notice of the Employer's
> intention to make changes in departmental rules, policies or
> procedures *that would affect the working conditions of
> employees or equipment peculiar to police work*[.]

(Emphasis added.)  SHOPO has the opportunity to consult with KPD
on proposed changes.  SHOPO's consent to the changes is not
required by the CBA.

Article 17 concerns uniforms and equipment.  It creates
a committee to evaluate proposed changes in personal police
equipment and make recommendations to the chief "for
consideration and action."  SHOPO's consent to the changes is not
required by the CBA.

HLRB found that the BWCS was "equipment peculiar to
police work."  That finding was supported by substantial evidence
and was not clearly erroneous.  HLRB concluded that "the adoption
of GO-41.17 is a change or addition to 'departmental rules,
policies or procedures that would affect the working condition[s]
of employees or equipment peculiar to police work.'"  SHOPO
agrees with that conclusion, but argues that HLRB erred by
concluding that the phrase "peculiar to police work" modifies
both "working conditions" and "equipment" in Article 14.

3

The word "or" is a conjunction indicating an alternative.[5]  Because no comma separates the clauses in Article 14, the language could be read two ways: (1) the opportunity to consult applies to proposed changes that would affect "the working conditions of employees" or "equipment peculiar to police work" or (2) the opportunity to consult applies to proposed changes that would affect "the working conditions of employees or equipment" that are "peculiar to police work."  HLRB resolved the apparent ambiguity by concluding:

> The phrase "peculiar to police work" modifies both "working conditions" and "equipment" in CBA Section 14.A. Otherwise, CBA Section 14.A could be read to mean that rules, policies and procedures may be changed even though it affects any type of working condition, and not just working conditions that are "peculiar to police work."  If this was the intention of CBA Section 14.A, then all of SHOPO's arguments would be baseless since KPD could affect "working conditions" by just changing its rules and policies irrespective of whether the working conditions related to non-police work.

HLRB's conclusion was not wrong.  "A contract is ambiguous when its terms are reasonably susceptible to more than one meaning." Provident Funding Assocs., 149 Hawaiʻi at 298, 488 P.3d at 1277.  But ambiguity exists "only when the contract *taken as a whole*[] is reasonably subject to differing interpretation." Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203, 209–10, 684 P.2d 960, 964 (1984) (emphasis added).  A contract is "*construed as a whole* and its meaning determined from the *entire context* and not from any particular word, phrase or clause." Maui Land & Pineapple Co. v. Dillingham Corp., 67 Haw. 4, 11, 674 P.2d 390, 395 (1984) (emphasis added) (citation omitted).

Reading the CBA as a whole, the Article 14 opportunity to consult applies to proposed changes that would affect working conditions peculiar to police work.  The BWCS affected working conditions peculiar to police work because only on-duty officers

---

[5]  Or, Merriam-Webster, https://www.merriam-webster.com/dictionary/or (last visited Feb. 12, 2024).

had to use it.  The BWCS is also equipment peculiar to police work.  HLRB was not wrong to conclude that GO-41.17 was subject to the consultation provisions of Article 1.C. and Articles 14 and 17, not the mutual consent requirement of Article 1.D.

SHOPO argues that the Article 1.D. mutual consent requirement applies because GO-41.17 applied to "conditions of work" — the potential that a police officer could be disciplined for violating the order.  The mutual consent requirement in Article 1.D. applies only to "conditions of work *contained herein*" — that is, contained in the CBA (emphasis added).  GO-41.17 changed no provision of CBA Article 13 (Discipline and Dismissal) or any other condition of work contained in the CBA.  As a matter of law, the Article 1.D. mutual consent requirement did not apply to GO-41.17.  HLRB's decision was not wrong, nor was the circuit court wrong to affirm HLRB's decision.

Because we hold that HLRB correctly applied the CBA, we need not address SHOPO's arguments about management rights or the constitutionality of HRS § 89-9(d).  The "Final Judgment" entered by the circuit court on April 25, 2017, and HLRB's "Findings of Fact, Conclusions of Law, and Decision and Order[,]" entered on June 3, 2016, are affirmed.

DATED:  Honolulu, Hawai'i, February 15, 2024.

On the briefs:

Keani Alapa,
Vladimir Devens,
for Complainant-Appellant-
Appellant.

Adam P. Roversi,
Office of the County
Attorney, for Respondents-
Appellees-Appellees.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge